No. 56,479

In The Matter of The Residency Application of
Scott Arden Bybee
(691 P.2d 37)

Opinion filed December 4, 1984.

*Karen A. Nichols,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the briefs for the appellant.

*Phillip Mellor,* of Mellor & Miller, P.A., of Wichita, argued the cause, and *Arden P. Miller* and *Mark Mellor,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal by Wichita State University (WSU) from a district court decision reversing the decision of the faculty committee on residency and granting Scott Bybee Kansas resident status for tuition purposes.

Scott Bybee was born in Idaho in 1956 and lived in Pocatello, Idaho, until graduation from high school, at which time he enlisted in the U.S. Navy. During his six-year Navy enlistment, Bybee spent one of his leaves in Wichita with friends with whom he discussed his career and the possibility of making Kansas his home. After completing his Navy obligation, Mr. Bybee returned

to his home in Idaho where he attended school. In May 1982, at age twenty-six, Bybee moved to Wichita and enrolled in Wichita State University in a course of study in avionics. He obtained a Kansas driver's license and purchased a Kansas hunting license. He rented a place to live in Wichita and registered to vote. Bybee paid his income taxes in Kansas and when his Idaho vehicle registration expired he registered it in Kansas and paid Kansas personal property taxes at that time. He obtained part-time employment in Wichita and expressed his intention to permanently reside in Kansas. Bybee's income was derived 40% from his job; 50% from veteran's benefits; and 10% from his father, who resides in Idaho.

On May 4, 1983, Scott Bybee applied for resident classification for tuition purposes at WSU. His application was denied by the faculty committee on residency on May 19, 1983. On August 5, 1983, Bybee supplemented his application for resident status. On August 26, 1983, the faculty committee on residency again denied Mr. Bybee's request for resident status. Mr. Bybee appealed the committee decision to the district court. The district court reversed the faculty committee and remanded with directions to grant Mr. Bybee resident status for tuition purposes effective August 26, 1983.

WSU initially argues the district court, on appeal, improperly substituted its judgment for that of the administrative board. Scott Bybee's appeal of the decision of the faculty committee denying him residency status to the district court is governed by K.S.A. 60-2101(d). Pursuant to the statute, the district court's scope of review on appeal is limited. We defined this limited review in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 (1968), stating:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority."

The administrative order was supported by substantial competent evidence and was within the scope of the committee's authority. The only remaining question is whether the committee's action was arbitrary, capricious or unreasonable.

In *Foote,* we further discussed our duty in examining whether the district court acted within its scope of review:

"In reviewing a district court's judgment . . . this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." 200 Kan. 447, Syl. ¶ 2.

Thus, we are in the same position as the district court in determining whether the committee's action was arbitrary and capricious.

The district court held the committee acted arbitrarily and capriciously in denying Bybee's application because the committee weighed the factors governing residency rather than considering them as "they relate to the ultimate conclusion" of intention to become a permanent Kansas resident. The court also held the committee arbitrarily determined that anyone in Bybee's position could never prove residency, rather than considering Bybee's particular situation.

Pursuant to Kansas statute, a student is not a resident for tuition purposes if that person has not been a resident of Kansas the twelve months prior to enrollment. K.S.A. 76-729. The factors utilized in determining residency were established by the state Board of Regents, pursuant to K.S.A. 76-730, and are contained in that agency's administrative regulations. K.A.R. 88-3-2 defines residency for tuition purposes as follows:

"Except as otherwise provided in the rules and regulations of the state board of regents, residence means a person's place of habitation, to which, whenever he or she is absent he or she has the intention of returning. A person shall not be considered a resident of Kansas unless he or she is in continuous physical residence and intends to make Kansas a permanent home, not only while in attendance at an educational institution, but indefinitely thereafter as well.

"(1) The following factors, while not conclusive, have probative value in support of a claim for resident classification: (a) continuous presence in Kansas during periods when not enrolled as a student; (b) employment in Kansas; (c) payment of Kansas state income taxes; (d) reliance on Kansas sources for financial support; (e) commitment to an education program which indicates an intent to remain permanently in Kansas; (f) acceptance of an offer of permanent employment in Kansas; (g) admission to a licensed practicing profession in Kansas; (h) ownership of a home in Kansas. Any such factor to be given weight, must be of at least one year's duration prior to enrollment or re-enrollment.

"(2) The following circumstances, standing alone, ordinarily will not constitute sufficient evidence of a change to Kansas residence: (a) voting or registration for voting in Kansas; (b) employment in any position normally filled by a student; (c) lease of living quarters in Kansas; (d) a statement of intention to acquire

residence in Kansas; (e) residence in Kansas of the student's spouse; (f) vehicle registration in Kansas; (g) acquisition of a Kansas driver's license; (h) payment of Kansas personal property taxes. However, maintenance of ties with another state, such as voting, payment of personal property taxes, registering a vehicle or securing a driver's license there, may be considered sufficient evidence that residence in the other state has been retained."

Each factor must have been in existence for one continuous year immediately prior to enrollment, pursuant to K.A.R. 88-3-3. Considering each factor as it applies to this case, Mr. Bybee stated in his May 4, 1983, application that he had lived in Kansas since May 26, 1982, less than one year. During that time, Mr. Bybee was enrolled for thirteen credit hours at WSU during both the fall of 1982 and spring of 1983 semesters. Mr. Bybee stated in his application that he worked twenty hours a week from September 1982 to January 1983 but had not worked from January 1983 until June 1983, and was employed full-time from June 1983 to August 1983. All employment factors therefore were less than one year.

On his May 4, 1983, application, Mr. Bybee stated he filed his preceding year's income tax return in Idaho. He listed his sources for financial support at 25% from his own employment; 50% from veteran's benefits; and 25% from his father, who was living in Pocatello, Idaho. He stated his employment goal was in aviation engineering, which attracted him to Wichita since it is a "major aviation production location." He had not accepted an offer of permanent employment in Kansas; nor had he been admitted to a licensed practicing profession; nor did he own a home in Kansas. As to the other less probative factors, Bybee stated he had last voted in California; had part-time employment during the school year and full-time employment in the summer; leased his own living quarters in Kansas; intended to remain a permanent Kansas resident; was not married; had vehicle registration in Idaho; had a Kansas driver's license; and had not paid Kansas personal property taxes.

On May 19, 1983, William Wynne, secretary of the faculty committee on residency, informed Mr. Bybee his application had been denied. Mr. Wynne explained the committee's action:

"Establishment of residency - for tuition purposes - requires (1) physical presence for 12 consecutive months immediately prior to enrollment, AND (2) the intention to make Kansas your permanent home. A statement of intent in and of itself is not sufficient - the committee must evaluate the actions of an individual

as they relate to stated intent. A person who has been primarily a full-time student since coming to Kansas, has little to support a statement of intent unless some other strong tie to Kansas, such as a permanent full-time job, is present. Any such tie, to be given weight, must be of at least a year's duration prior to enrollment or re-enrollment.

"The Committee does not feel that, at this time, you have *permanent* ties to Kansas which are *stronger* than your temporary ties as a student. When there has been some significant change in your life which could be a factor in support of a claim for resident classification, and that change has been in effect for a year, I suggest that you reapply."

On August 5, 1983, Mr. Bybee filed a supplemental application for resident classification. The second application contained corrected information as to the dates of Mr. Bybee's employment at Payless Cashways. In his initial application he had listed employment from June 1983 to August 1983. In his supplemental application he changed those dates to June 1982 through August 1982. His supplemental application also added his full-time employment at NCR from May 16, 1983, until the date of the application. The NCR job was listed as being during alternating semesters. Other information was also supplemented or updated. He had filed a 1983 Kansas income tax return. His reliance for financial support had changed to 40% from his own employment, 50% from veteran's benefits, and 10% from his father, who lived in Pocatello, Idaho. He had registered to vote in Kansas in 1982. He had registered his car in Kansas and paid personal property taxes on the car at the time of registration. The supplemental application was accomplished by a letter explaining his move to Kansas and his intent to remain here. An affidavit was also filed from a family friend corroborating Bybee's desire to remain in Kansas.

On August 26, 1983, Mr. Wynne notified Mr. Bybee that his latest application had been denied. Wynne explained:

"The Committee still does not feel, in spite of your eloquent statement, that there exists now objective evidence of *permanent* ties to Kansas which are stronger than your temporary ties as a full-time out-of-state student. The most significant or strongest facts/actions in your case are: 1) you came to Kansas with a specific educational goal; and 2) you have been enrolled full-time every semester since arrival."

WSU further explained in its brief before this court why it determined Mr. Bybee did not qualify as a resident of Kansas for tuition purposes. First, it felt Bybee's three-month employment in Kansas did not qualify as continuous presence in Kansas

during periods while not enrolled in college in Kansas, since it had not occurred for at least one year's duration prior to enrollment. Secondly, WSU believed Mr. Bybee's job with NCR was employment in a position normally filled by a student since the job was a cooperative education position under the auspices of WSU. Students working in this program obtained their jobs by enrolling in cooperative education classes at the university. College credit was given for this work experience. Bybee's other employment was either for the summer only or part-time for a few months during the school year. Additionally, none of the jobs, nor a combination of the jobs, were for a year's duration.

WSU argues the district court's reversal of the committee's decision was based upon its finding that the committee did not afford proper weight to Mr. Bybee's declaration of intent to be a resident. WSU contends this was a reweighing by the court of the evidence and a substitution of its judgment for that of the administrative body, in violation of the scope of review articulated in *Foote*.

Bybee argues the district court was correct in overruling the committee's decision since the ultimate question before the committee was consideration of the applicant's intention. He argues the factors are merely guides to determine that intention, not conclusive presumptions. Bybee further argues the committee's decision dictates that no individuals who come to Kansas to go to school and begin school upon their arrival could ever gain residency status, regardless of the sincerity of their desire to remain within the state after graduation. This argument is unsupported by the facts. Individuals could qualify as Kansas residents if they fulfilled the regulations adopted pursuant to K.S.A. 76-729. Bybee simply did not fulfill the requirements. Therefore, the action of the board in denying Bybee residency status was not arbitrary, capricious or unreasonable.

Bybee next argues the regulations governing the individual's qualification as a resident are unconstitutional. WSU accurately points out the constitutionality of the regulations was never raised prior to the filing of Bybee's brief in this case. Bybee contends he can raise the issue for the first time here because the law merely provides that an issue cannot be raised on appeal that was not raised in the trial court, and since the district court here acted as an appellate court and not a trial court, the issue may be

raised. This argument is without merit. The law requires an issue to be raised prior to appeal. See *Lostutter v. Estate of Larkin,* 235 Kan. 154, 166, 679 P.2d 181 (1984). Since administrative boards and agencies, such as the faculty committee in this case, may not rule on constitutional questions, the issue of constitutionality must be raised when the case is on appeal before a court of law. See 73 C.J.S., Public Administration and Procedure § 65. In this case, therefore, Bybee was required to raise the issue on the first appeal which was before the district court. Bybee failed to do so, thus he forfeited his right to raise the issue before this court.

Bybee asserts the issue was raised prior to appeal since one of his allegations was that the committee's action was arbitrary. He argues an administrative decision which is arbitrary is equal to a claim of unconstitutionality. He cites several cases which held statutes which gave agencies broad undefined powers were unconstitutional. The basis for the unconstitutionality in those decisions was the separation of powers. The cases clearly are not applicable here. We have held where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. See *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 374, 552 P.2d 885 (1976). Thus, the constitutionality of the regulation is not an issue before this court.

The judgment of the trial court is reversed.

HOLMES, J., not participating.