No. 87,875

ROBERT E. LACY, D.D.S., *Appellant,* v. KANSAS DENTAL BOARD, *Appellee.*

(58 P.3d 668)

Opinion filed December 6, 2002.

*Dennis Owens,* of Kansas City, Missouri, argued the cause, and *Steven Benner,* of Kansas City, Missouri, and *David Rauzi,* of Overland Park, were with him on the brief for appellant.

*Clinton E. Patty,* of Frieden, Haynes & Forbes, of Topeka, argued the cause, and *Randall J. Forbes,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is an appeal from the district court's ruling upholding a decision of the Kansas Dental Board wherein Robert E. Lacy, D.D.S., was found to have violated K.S.A. 65-1435(c) and K.S.A. 65-1436(a)(1) and (13) and ordered suspended from the practice of dentistry for a period of 30 days. Issues of statutory construction, existence of substantial competent evidence, and claimed violations of due process rights are raised. Our jurisdiction is under K.S.A. 20-3018(c) (transfer from the Court of Appeals on our own motion).

## Procedural summary

Dr. Lacy was the subject of a disciplinary action by the Kansas Dental Board (Board) based on claims of false or misleading information placed on claim forms submitted to Delta Dental Insurance and allegations that Dr. Lacy conducted a dental office in Wichita without being present a majority of the hours that it was open. The Board affirmed the decision of the administrative law judge (ALJ) finding Dr. Lacy violated both statutes. The decision was appealed to the district court, which affirmed the Board's decision. It is from the district court's decision that Dr. Lacy appeals to us.

## Findings of the ALJ and additional facts

The ALJ made findings of fact numbered 1 through 20:

"1. The respondent, Dr. Robert E. Lacy, is a licensed dentist in the state of Kansas. Dr. Lacy has been practicing in the state of Kansas since 1962.

"2. The Kansas Dental Board is vested with authority to discipline its licensees.

"3. Dr. Lacy's primary dental practice is located in Topeka, Kansas. However, Dr. Lacy has also operated dental offices in Oswego, Kansas; Fredonia, Kansas; and in Wichita, Kansas.

"4. Regarding the Wichita dental office, Dr. Lacy acquired this office in June 1995, and operated the office through March 1996.

"5. Dr. Lacy did not personally perform any dental services in the Wichita office. Dr. Lacy hired Dr. James Murphy to perform dental services in the Wichita office.

"6. Dr. Lacy would visit the Wichita office approximately twice a week.

"7. Dr. Lacy's agreement with Dr. Murphy called for Dr. Murphy to charge for Dr. Lacy's normal operating procedures as done in Dr. Lacy's other offices. This would include charges for periodic and emergency exams.

"8. Dr. Murphy did not make charges for services as contemplated by Dr. Lacy. Dr. Murphy did not always charge for periodic and emergency examinations.

"9. Dr. Lacy served as a participating dentist in the Delta Dental Plan of Kansas, Inc., from June 1995 through December 1996.

"10. Dr. Murphy, while employed in Dr. Lacy's Wichita office, was not a participating dentist in the Delta Dental Plan.

"11. Under the Delta Dental Plan, a participating dentist is paid directly from Delta Dental. Non-participating dentists are not paid by Delta Dental and instead Delta Dental payments are paid directly to dental patients.

"12. In July 1995, officials of Delta Dental met with Dr. Lacy. During this visit, Dr. Lacy was advised that the Delta Dental claim form must be completed by the treating dentist. The treating dentist certifies that the dental procedures were completed, were necessary, and the fee charge was the usual fee to be collected.

Additionally, the certifying dentist states that they intend to collect the fee unless otherwise noted.

"13. In March 1996, Dr. Lacy was concerned that Dr. Murphy was not performing according to his contractual agreement and was concerned at the loss of revenues from the Wichita office. As a result of these concerns, Dr. Lacy ended his business relationship with Dr. Murphy.

"14. Dr. Lacy's employees began to examine the dental records contained in the Wichita office and the billings to Delta Dental done by Dr. Murphy. In reviewing these records, Dr. Lacy's employees determined certain services were not billed. For example, the dental records indicated, in some cases, that periodic exams were not billed. In other cases, x-rays were taken and there were no billings to Delta Dental for the x-rays.

"15. As a result of Dr. Lacy's review of the billings from the Wichita office, Dr. Lacy began to submit claims to Delta Dental, Inc., for additional fees. Dr. Lacy signed claim forms, which included the following statement:

'I hereby certify that the procedures as indicated by date have been completed by me and were necessary in my professional judgment and the fees shown as the usual fee and fee intended to collect except where noted. I request payment in accordance with DDPK rules and regulations.'

"16. Of the billings submitted by Dr. Lacy for patients of the Wichita office, Dr. Lacy received approximately $120.00. Most of the claims submitted by Dr. Lacy were denied. The basis for the denial was that the claims were filed six months after the services were performed or that the services were not performed by Dr. Lacy, but instead were performed by Dr. Murphy.

"17. As a result of his review of the operations of the Wichita office, Dr. Lacy became convinced that Dr. Murphy embezzled funds from Dr. Lacy. Dr. Lacy sought criminal charges against Dr. Murphy and Dr. Lacy filed a claim with his insurance carrier for Dr. Murphy's alleged malfeasance.

"18. Ultimately, Dr. Murphy and Dr. Lacy settled their disputes through litigation. Thereafter, Dr. Murphy sought relief through bankruptcy proceedings.

"19. Dr. Lacy's insurance company ultimately paid him the maximum allowable under the terms of the policy. Payment made from the insurance company to Dr. Lacy was $10,000.00.

"20. The dental records completed by Dr. Murphy in the Wichita office did not indicate that patients would be charged for the services that Dr. Lacy ultimately submitted billings to Delta Dental. Dr. Murphy would either not bill for the services or would indicate that there was no charge for the services. Dr. Lacy's billings to Delta Dental conflicted with Dr. Murphy's records that indicated the patients should not be charged."

The evidence presented to the ALJ further showed that Dr. Lacy called his Wichita practice "Kansas Dental Service," which is the same name he sometimes uses for his own practice. Kansas Dental

Service is not a professional corporation. Dr. Lacy paid Dr. Murphy a salary and provided him a vehicle which was surrendered when Dr. Murphy was fired by Dr. Lacy near the end of March 1996.

Dr. Murphy denied he took money from Dr. Lacy and claimed the practice income declined because his advertising budget was cut by Dr. Lacy. He said that some of his patients were rebilled by Dr. Lacy after his services were terminated. He claims the Wichita police did not find him guilty of wrongdoing, and he was not subject to an investigation by the Kansas Dental Board.

Dr. Lacy testified that Dr. Murphy was required to use the same billing practices that were used at Dr. Lacy's Topeka office, but that Dr. Murphy violated these agreements. Dr. Lacy contended he submitted the claim forms to Delta Dental Insurance to make a record of Dr. Murphy's embezzlement scheme. Dr. Lacy testified he did not provide dental services to or see patients at the Kansas Dental Service office in Wichita.

After Dr. Murphy left in March 1996, Dr. Lacy had his employee, Angie Leprich, review the Wichita files and submit claims for which Dr. Lacy would have charged for but Dr. Murphy did not. Highly summarized, the extra claims generally involved x-rays or periodic or emergency examinations for which charges had not previously been made. According to Delta Dental's employee, Junetta Everett, approximately 80 claims were processed from the Wichita office between January 1 and June 1, 1996. The records of seven of the claims were admitted at the administrative hearing. The claims were dated in late April 1996; most were signed in the name of Dr. Lacy indicating he was the treating dentist. The signature line also stated the signor agreed to pursue collection of the fees. One of the claim forms did note that the "operating Dentist" was Dr. Murphy, but the remaining ones utilize Dr. Lacy's name only.

*Applicable Law and Conclusions of ALJ and Kansas Dental Board.*

The ALJ's decision referenced K.S.A. 74-1406, K.S.A. 65-1436(a)(1) and (16), and K.S.A. 65-1436(b) and (c). As a point of clarification, the ALJ and district court referred to subsection

(a)(16). However, the statute in effect at the time of the alleged violations was K.S.A. 65-1436(a)(13). Amendments to 65-1436 in 1996, 1997, 1998, and 2001 resulted in the renumbering of the subsections so that (a)(13) is now (a)(16). See K.S.A. 2001 Supp. 65-1436(a). With the exception of the addition of language not relevant to this opinion, the two subsections are identical. Our discussion, however, will reference (a)(13). The ALJ reached the following conclusions:

"CONCLUSIONS

"1. The petitioner makes two allegations concerning the respondent's dental practice insofar as it relates to the Wichita office. First, the petitioner alleges that Dr. Lacy has violated K.S.A. 65-1435(c) in that he failed to personally be present in the Wichita office and that he personally failed to oversee the operations of the office during the majority of the time the office was operating. Second, the petitioner alleges that Dr. Lacy's submission of claims to Delta Dental were misleading and false and were in violation of K.S.A. 65-1436(a)(1) and (16).

"2. Turning first to the alleged violation of K.S.A. 65-1435(c), the evidence presented establishes that Dr. Lacy was not in the Wichita office during the majority of the time the office was being operated and that he did not personally oversee the operations of this office. Dr. Lacy did not perform dental services nor supervise the dental services that were performed in the Wichita office. As such, Dr. Lacy has violated K.S.A. 65-1435(c).

"3. The respondent argues that he did not 'conduct' a dental office, and therefore a violation of 65-1435(c) has not been established. The term conduct is not defined in the statute. However, Dr. Lacy certainly was operating the Wichita office as his facility. Dr. Lacy on two occasions in his testimony referred to Dr. Murphy as an employee. Dr. Lacy directed Dr. Murphy on how to bill and for which services he was to bill. Dr. Lacy went to the Wichita office twice a week to 'check on the operations of the office.'

"4. Under K.S.A. 65-1435(c), Dr. Lacy was required to be personally present in the office or personally overseeing such operations during the majority of the time the Wichita office was being operated. Dr. Lacy did not do this. As such, a violation of K.S.A. 65-1435(c) has been established.

"5. The petitioner's second violation involves multiple misleading insurance claim forms submitted to Delta Dental in violation of K.S.A. 65-1436(a)(1) and (16). It is undisputed that claim forms indicating that Dr. Lacy performed services in the Wichita office were submitted to Delta Dental. These claim forms purport that Dr. Lacy performed services for patients in the Wichita clinic and that payment was due for these services.

"6. The facts establish that Dr. Lacy did not perform any services for patients in the Wichita office. This is a misrepresentation. Further, the facts establish that

the patients in many of the cases were not to be billed for the services provided. Since the patients were not to be billed, this is also a misrepresentation.

"7. Dr. Lacy argues that Delta Dental knew that he was not performing services in the Wichita office, and therefore the claims were not misleading. Whether Delta Dental knew Dr. Lacy was not practicing in Wichita or not is irrelevant. The fact is that Dr. Lacy signed a claim form certifying that services were performed by him when services were not performed by him. This was a misrepresentation by Dr. Lacy to Delta Dental and whether Delta Dental was misled or deceived is irrelevant.

"8. Dr. Lacy also argues that it was necessary to submit these claims to Delta Dental to establish that Dr. Murphy had embezzled from Dr. Lacy's office. This argument has no merit. Whether Dr. Murphy embezzled from Dr. Lacy would not be established by submitting claims to Delta Dental. Dr. Murphy's failure to submit claims to Delta Dental would not show Dr. Murphy embezzled from Dr. Lacy.

"9. Finally, Dr. Lacy argues that there is no evidence that he was paid on claim forms submitted to Delta Dental after the Wichita office closed, and therefore there is no violation of K.S.A. 65-1436(a)(1). This argument is also without merit. Dr. Lacy signed Delta Dental claim forms as well as other forms seeking payment from Delta Dental. In each of these signings, Dr. Lacy purports to have performed dental services for patients in the Wichita office and seeks payment for these services. This is untrue. This violates K.S.A. 65-1436(a)(1). Dr. Lacy did not perform any services for patients in the Wichita office yet he told Delta Dental he did. This is a clear misrepresentation of the facts. Turning to K.S.A. 65-1436(a)(16) this was an 'untrue or fraudulent misrepresentation in the practice of dentistry or on any documents connected with the practice of dentistry by knowingly submitting any misleading, deceptive, untrue or fraudulent misrepresentation on a claim form.' Dr. Lacy's submission cannot be said to be anything less than a deceptive, untrue, and fraudulent misrepresentation. Dr. Lacy has violated both K.S.A. 65-1436(a)(1) and K.S.A. 65-1436(a)(16).

"10. The petitioner has established by clear and convincing evidence that Dr. Lacy has violated K.S.A. 65-1436(c) and K.S.A. 65-1436(a)(1) and (16). At the request of the Kansas Dental Board, the license to practice dentistry of Dr. Robert E. Lacy is hereby suspended for a period of thirty (30) days.

"11. The thirty-day (30) suspension of Dr. Lacy's license shall be completed within six months from the date of this Initial Order or any appeal thereof. Dr. Lacy shall advise the Kansas Dental Board and the Dental Board's attorneys of record in writing of what thirty (30) consecutive day period in which his license will be suspended. Dr. Lacy shall select this 30-day period to allow Dr. Lacy to coordinate the suspension of his license with his practice for the continued treatment of Dr. Lacy's patients."

The Kansas Dental Board approved and adopted the findings and conclusions of the ALJ.

*Appeal to the District Court*

Dr. Lacy appealed the findings and conclusions of the ALJ and the Board to the Shawnee County District Court. He there contended, for the first time, that his due process rights were violated by the agency's failing to hear charges against him within 90 days of the initial filing. Dr. Lacy further contended the Board erroneously interpreted K.S.A. 65-1435(c) and the finding that he operated a dental office in Wichita without being personally present in violation of K.S.A. 65-1435(c) was not supported by clear and convincing evidence.

Dr. Lacy additionally argued that the Board's findings that he violated the provisions of K.S.A. 65-1436(a)(1) and (13) were not supported by clear and convincing evidence. He also argued the disciplinary action against him was arbitrary and capricious when measured against his employee, a licensed dentist. This last argument was not made in the appeal from the denial of his petition for judicial review by the district court, and it will not be further discussed.

The district court set forth in detail the factual allegations of the parties, which need not again be repeated. The district court concluded that its standard of review was as follows:

"Orders of the Kansas Dental Board are subject to judicial review under the Act for Judicial Review and Civil Enforcement of Agency Actions. K.S.A. § 77-601 *et seq.* 'The burden of proving the invalidity of the agency action is on the party asserting invalidity.' K.S.A. § 77-621(a)(1). When reviewing an agency's decision, the findings of fact, 'if supported by substantial competent evidence, are conclusive and may not be set aside by a reviewing court.' *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs,* 256 Kan. 426, 441, 885 P.2d 1233 (1994). The evidence of the defendant board, to justify its conclusion needs to be 'substantial' and 'competent,' and it need not rise to the level of being 'clear and convincing' as urged by the plaintiff. Also, on disputed issues of fact, the evidence must be reviewed in the light most favorable to the prevailing party in determining whether there is substantial competent evidence to support the findings. (*Sunflower,* supra, p. 441; *Angleton v. Starkan, Inc.,* 250 Kan. 711, 716, 828 P.2d 933 (1992). This Court should not reweigh the evidence. (*Sunflower,* supra, p. 441). Additionally, when reviewing such a decision, the court is to engage in de novo review of issues of law. *Citizens' Utility Ratepayer Board v. State Corp. Comm'n,* 264 Kan. 363, 410, 956 P.2d 685 (1998). However, the court should grant deference to the agency's statutory interpretation if it is supported by a rational basis.

*National Council on Compensation Ins. v. Todd,* 258 Kan. 535, 905 P.2d 114 (1995). On review, relief will be granted by the Court only if it determines any one of the following:

 (1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

 (2) the agency has acted beyond the jurisdiction conferred by any provision of law;

 (3) the agency has not decided an issue requiring resolution;

 (4) the agency has erroneously interpreted or applied the law;

 (5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

 (6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

 (7) the agency action is based on a determination of fact, made or implied by agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

 (8) the agency action is otherwise unreasonable, arbitrary, or capricious.

 (See K.S.A. § 77-621(c)).

"An agency order is arbitrary or capricious when it is not supported by substantial evidence. *Kansas Racing Management, Inc. v. Kansas Racing Comm'n,* 244 Kan. 343, 365, 770 P.2d 423 (1989). 'Substantial evidence' is evidence possessing both relevance and substance that furnishes substantial basis of fact from which issues can reasonably be resolved. *City of Wichita v. Public Employee Relations Bd.,* 259 Kan. 628, 913 P.2d 137 (1996)."

The district court denied Dr. Lacy's petition for judicial review in its memorandum decision, which as to the issues raised before us is summarized as follows:

1. As to the alleged due process violation for not having a hearing within 90 days under K.S.A. 77-511(b)(2), the court held this statute applied only to applications for license or renewal and this contention was denied for lack of any compelling legal authority.

2. The wording of K.S.A. 65-1435(c) was set forth and the court's decision pointed to that wording.

"It shall be unlawful . . . to associate together with persons licensed to practice medicine or surgery in a clinic or professional association under a name that may or may not contain the proper name of any such person or persons and may contain the word, 'clinic,' unless such licensee is personally present in the office operating as a dentist or personally overseeing such operation as are performed

in the office or each of the offices during a majority of the time the office or each of the offices is being operated."

Apparently Dr. Lacy's argument was that to violate this statute the Board would have had to find the office or clinic was in his name. The district court noted Dr. Lacy owned the Wichita office, was not there a majority of the time, and failed to oversee Dr. Murphy's work when the office was being operated. The decision held that the "name" was secondary and while a dentist may own or have several offices, it is illegal unless he or she is personally present or personally oversees the office whenever it is operated. The district court decision further stated the obvious intent of the statute "is to prevent absentee ownership which might create a chain or franchising for the delivery of dental services." By requiring a dentist's personal presence, the statute eliminates absentee ownership of dental offices.

The district court found there was substantial evidence to support the Board's finding that Dr. Lacy owned and operated the Wichita office without being present or supervising the performance of dental services as required by K.S.A. 65-1435(c). The decision held there was a rational basis for the Board's interpretation of K.S.A. 65-1435(c).

3. As to complaints concerning K.S.A. 65-1436, the district court's memorandum decision and order looked only to the wording of subsection (a)(1), which provides:

" '(a) The Kansas dental board may . . . take any of the actions with respect to any dental . . . license as set forth in subsection (b), whenever it is established . . . that . . . any licensed dentist . . . has:
'(1) committed fraud, deceit or misrepresentation in obtaining any license, money or other thing of value.' "

The district court found Dr. Lacy had represented that dental work had been done by him when it had in fact been done by Dr. Murphy without his assistance, presence, or supervision in the claims he filed for compensation with either Delta Dental or Cincinnati Insurance Company. Dr. Lacy's acts, plans, and representations were held to be tainted with fraud, deceit, and misrepresentation. These misrepresentations were held to include the

representation that he had performed dental work which he had not done and for adding services not separately billed by Dr. Murphy, all after being warned by representatives of Delta Dental not to make claims in this manner.

The district court decision held there was substantial evidence that while Dr. Lacy may not have expected payment from Delta Dental, he did from Cincinnati, and he did receive $120 from Delta. Fraud was defined as "anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence resulting in damage to another." It was held there was substantial evidence to support the Board's findings of fraud.

It is from the district court's decision that Dr. Lacy now appeals to us.

*Standards of Review of Decisions of Administrative Agencies*

The standards of review set forth in the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, were previously stated herein from the district court's decision. We have further said in *Hickman Trust v. City of Clay Center*, 266 Kan. 1022, 1036, 974 P.2d 584 (1999):

"As stated in *Lawrence v. Preservation Alliance, Inc. v. Allen Realty, Inc.*, 16 Kan. App. 2d 93, 102-03, 819 P.2d 138 (1991), *rev. denied* 250 Kan. 805 (1992):

'The standard of review for appeals from administrative action is well-settled:

" 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

" 'In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court.' " *Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986) (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ ¶ 1 and 2, 436 P.2d 828 [1986]).

See *DSG Corp. v. Shelor*, 239 Kan. 312, 315, 720 P.2d 1039 (1986); K.S.A. 77-621.'

"The Court of Appeals added that the administrative action may be found to be invalid if the governing body erroneously interpreted or applied the law. 16 Kan. App. 2d at 103."

Here, we have clear issues of statutory construction. We must follow the rules of statutory construction set out in *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001):

"This case involves the interpretation of a statute, which is a question of law over which our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). Our rules of statutory construction are well known and require us to interpret a statute to give the effect intended by the legislature, *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 981 (1990), construe the statute to avoid unreasonable results, *Wells v. Anderson*, 8 Kan. App. 2d 431, 433, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983), and read the statute to give effect, if possible, to the entire act and every part thereof. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984)."

In addition, as the basic review in this case is from the actions of the Board, we are obligated to apply the doctrine of operative construction, which we defined in *GT Kansas* in this manner:

" ' "The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. . . . Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts. [Citation omitted.]" ' *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999) (quoting *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 [1991])." ' " 271 Kan. at 317.

With this background of our standards of review, we move to the three issues raised by Dr. Lacy in this appeal.

*Did Dr. Lacy's owning and operating of a dental office in Wichita where he was not personally present during the majority of the time the office was open violate the provisions of K.S.A. 65-1435(c)?*

The specific language of K.S.A. 65-1435(c) is as follows:

"It shall be unlawful, and a licensee may have a license suspended or revoked, for any licensee to conduct a dental office in the name of the licensee, or to advertise the licensee's name in connection with any dental office or offices, or to associate together for the practice of dentistry with other licensed dentists in a professional corporation, organized under the professional corporation law of Kansas, under a corporate name, established in accordance with the professional corporation law of Kansas, that may or may not contain the proper name of any such person or persons or to associate together with persons licensed to practice medicine and surgery in a clinic or professional association under a name that may or may not contain the proper name of any such person or persons and may contain the word 'clinic,' unless such licensee is personally present in the office operating as a dentist or personally overseeing such operations as are performed in the office or each of the offices during a majority of the time the office or each of the offices is being operated."

We also consider the following language of subsection (d) of K.S.A. 65-1435, which reads: "Nothing in this section shall be construed to permit the franchise practice of dentistry."

The ALJ in his conclusions of law, paragraph 3, stated that Dr. Lacy argued that he did not "conduct" a dental office. Dr. Lacy continues this argument in his appeal before us. The ALJ noted that Dr. Lacy's operation was consistent with ownership, he referred to Dr. Murphy as an employee, he directed Dr. Murphy as to what services to bill for, and he went to Wichita to check on the operations of the office. Each of the ALJ's conclusions is clearly supported by substantial competent evidence. In addition to the ALJ's findings, the record reflects that Dr. Lacy controlled the advertising budget of the Wichita office, he provided a vehicle for Dr. Murphy and took it away when he terminated Dr. Murphy's employment, he sent a Topeka employee to examine the operations of the Wichita office, and in all relevant respects, owned, controlled, and managed the Wichita practice.

When an analysis is made of K.S.A. 65-1435(c), it shows there are four categories under which a practice is conducted which re-

quire the presence of the licensee. We break down the operative language of 65-1435(c) in the following manner:

"It shall be lawful . . . for any licensee

"to conduct a dental office in the name of the licensee, or

"to advertise the licensee's name in connection with any dental office or offices, or

"to associate together for the practice of dentistry with other licensed dentists in a professional corporation, organized under the professional corporation law of Kansas, under a corporate name, established in accordance with the professional corporation law of Kansas, that may or may not contain the proper name of any such person or persons, or

"to associate together with persons licensed to practice medicine and surgery in a clinic or professional association under a name that may or may not contain the proper name of such person or persons and may contain the word 'clinic.' "

After setting forth the four categories of operation of a practice, 65-1435(c) concludes with the limitation and requirement that makes it unlawful to so operate in any of the ways set forth above "unless such licensee is personally present in the office operating as a dentist or personally overseeing such operations as are performed in the office or each of the offices during a majority of the time the office or each of the offices is being operated."

The facts in this case make it clear that Dr. Lacy's actions amount to conducting a dental office in Wichita. When we look to the definition of "conduct," we find that it means "to direct the course of: CONTROL . . . to guide or lead." Webster's II, New College Dictionary 235 (1999). Everything about the Wichita office of Dr. Lacy showed that it was under his direct control. He was the owner. He hired and fired employees, he directed the manner of operations, he used the business name of Kansas Dental Services under which he did business at other locations, and he applied for reimbursement to Delta Dental on numerous occasions under Kansas Dental Service, Robert E. Lacy, D.D.S.

There is substantial competent evidence that Dr. Lacy conducted a dental office "in the name of the licensee" which K.S.A. 65-1435(c) specifically prohibits "unless such licensee is personally present . . . during a majority of the time the office . . . is being operated." It is also clear by his own testimony and admissions that Dr. Lacy was not personally present in the office operating as a

dentist, nor did he oversee the operations during a majority of the time the office was being operated.

Unfortunately, while the result reached by the district court *was* correct, the portion of K.S.A. 65-1435(c) upon which it focused simply was not applicable to Dr. Lacy. He has *not* associated himself with another licensed dentist in a professional corporation. This third category of dental practice, to which K.S.A. 65-1435(c) refers and that was underscored in the trial court memorandum decision previously set forth, does not directly apply to Dr. Lacy. But, as we have often stated, a trial court's reason for its decision is immaterial if the ruling is correct for any reason. *KPERS v. Reimer & Koger Assoc., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997).

The trial court correctly noted that the intent of K.S.A. 65-1435 is to prevent absentee ownership which might create the franchising of the delivery of dental services. This intent is clearly stated in K.S.A. 65-1435(d), which sets forth the legislature's intent to prohibit the "franchise practice of dentistry."

We have previously disposed of the argument that Dr. Lacy made on appeal that he did not "conduct" a dental office in Wichita because he provided no services there. He further argues that the intent of K.S.A. 65-1435 is to preserve the relationship between a patient and his or her dentist and that such intent was accomplished by Dr. Murphy's treatment of the patients. Dr. Lacy then points to amendments by other states of statutory provisions similar to K.S.A. 65-1435 to delete the "majority of the time" requirement and argues he did not violate the true purpose of K.S.A. 65-1435, the protection of the relationship between the patient and the dentist.

The arguments the Board makes are more persuasive. There is no exception in K.S.A. 65-1435(c) permitting a dentist to own the practice of another dentist, and Dr. Lacy in fact owned, operated, controlled, and conducted the Wichita practice of Dr. Murphy, which is prohibited by the plain language of the statute. The action taken by other states is not persuasive. If, in fact, the statute's plain wording does not fit the business plan which Dr. Lacy desired to pursue, his remedy is with the Kansas Legislature to amend the existing statutory language to permit ownership of the practice of

another dentist. Until it does so, we must apply K.S.A. 65-1435 as it is written. A reading of the entire statute, which must include subsection (d), shows that the ALJ, the Board, and the district court were correct in their construction and application of K.S.A. 65-1435(c): Dr. Lacy utilized his license as a dentist to conduct the Wichita practice which he operated in his name and conducted its operation without being personally present or overseeing the operations during a majority of the time that the office was being operated, contrary to the statute.

*Are the Kansas Dental Board's findings that Dr. Lacy violated K.S.A. 65-1436(a)(1) and (13) supported by substantial competent evidence?*

K.S.A. 65-1436(a)(1) and (13) state:

"(a) The Kansas dental board may refuse to issue the license provided for in this act, or may take any of the actions with respect to any dental or dental hygiene license as set forth in subsection (b), wherever it is established, after notice and opportunity for hearing in accordance with the provisions of the Kansas administrative procedure act, that any applicant for a dental or dental hygiene license or any licensed dentist or dental hygienist practicing in the state of Kansas has:

(1) Committed fraud, deceit or misrepresentation in obtaining any license, money or other thing of value;

. . . .

(13) engaged in a misleading, deceptive, untrue or fraudulent misrepresentation in the practice of dentistry or on any document connected with the practice of dentistry by knowingly submitting any misleading, deceptive, untrue or fraudulent misrepresentation on a claim form, bill or statement."

Subsection (b) of K.S.A. 65-1436 grants the Board the right to (1) revoke the license, (2) suspend the license for such period of time as may be determined by the Board, (3) restrict the practice, and (4) grant probation.

The principal argument that Dr. Lacy makes on appeal is that violations of subsections (a)(1) and (13) require proof of fraud by intentional acts. Dr. Lacy further contends there was no intent to receive anything of value from Delta Dental, as his submissions were only intended to substantiate his claims against Cincinnati Insurance Co. He argues that the statutes were misinterpreted and

the holdings of the ALJ, Board, and district court were not based on substantial competent evidence.

The Board counters by arguing there is substantial evidence that Dr. Lacy's actions show a knowing violation of both subsections (a)(1) and (13). Additionally, the Board contends it is not limited to proving only fraud, as the statute's plain language authorizes discipline for "fraud, deceit or misrepresentation" in subsection (a)(1) and of "misleading, deceptive, untrue or fraudulent misrepresentation" in subsection (a)(13). The Board contends and the record amply reflects that multiple claim forms were submitted to Delta Dental certifying that Dr. Lacy was the treating dentist in the Wichita office and would attempt to collect charges he never intended to collect.

The Board admits that Dr. Lacy offered justification for the submissions and contended there was no intent to mislead or deceive. But, the Board argues that Dr. Lacy had been warned by Delta Dental in 1995 not to submit the same type of false claim forms which he submitted in April 1996 and that the common definitions of "misleading, deceptive, untrue and misrepresented" all apply to his actions of submitting the false claim forms in violation of subsection (a)(13).

Further, there was a direct conflict between the testimony of Dr. Lacy and Dr. Ed Hall, which the ALJ resolved to Dr. Lacy's detriment. Dr. Lacy contended the forms he submitted were done under the instruction and knowledge of Dr. Hall, who contracted to provide claim review services to Delta Dental. Dr. Hall testified he was unaware of Dr. Lacy's problems with Delta Dental and never advised him how to file claim forms with Delta Dental.

In our discussion of this issue, we point out that the language in subsections (a)(1) and (13) is similar as to the wrongdoing required but that subsection (a)(1) also requires that "money or other thing of value" be obtained, while there is not a financial element to subsection (a)(13), and a submission which is a misleading, deceptive, untrue, or fraudulent misrepresentation claim form is sufficient to be a violation.

In addition, the plain meaning of both subsections is not limited to require proof of fraud in order to substantiate a violation, as is

centered by Dr. Lacy's arguments. While the Board may show fraud, it may also show deceit or misrepresentation to prove a violation of subsection (a)(1) and/or acts or actions which are misleading, deceptive, or untrue to show a violation of subsection (a)(13).

We will not limit our discussion to the district court's finding of fraudulent conduct as that is not necessary to uphold the Board's decision. The evidence is clear that the claim forms submitted to Delta Dental, which did in fact result in a minimal payment, represented work which had in fact been done by Dr. Murphy, not Dr. Lacy. The actions of Dr. Lacy taken in their entirety show deceit and misrepresentations. They were misleading, deceptive, and untrue.

For something to be "misleading" means "to lead into error or wrongdoing: DECEIVE." "Untrue" means "contrary to fact: FALSE; deviating from a standard of correctness." Webster's II, New College Dictionary 701, 1211 (1999). It is clear that the actions of Dr. Lacy fall within both of the above definitions of the statutory elements of subsections (a)(1) and (13). They were shown by substantial competent evidence from the claim form exhibits, as well as by the testimony of Everett, Leprick, and to an extent by the testimony of Dr. Lacy himself, although he offered justification which, in the final analysis, the ALJ, as the finder of fact, did not find sufficient to authorize his misleading, deceptive, and untrue actions.

The testimony of Dr. Lacy by which he contended his filings were made as suggested by Dr. Hall was not found by the ALJ to be credible. Nor was the explanation convincing that Delta Dental understood the reason for the filing of the claims in light of direct testimony and documentary evidence to the contrary. As the Court of Appeals said in *Boutwell v. Domino's Pizza*, 25 Kan. App. 2d 110, 112-13, 959 P.2d 469 (1998), *rev. denied* 265 Kan. 884 (1998):

"The appellate court cannot pass on the credibility of witnesses or weigh conflicting evidence. *City of Wichita v. Rice*, 20 Kan. App. 2d 370, 373 889 P.2d 789 (1995). It is the function of the administrative hearing body to determine the weight or credibility of the testimony of witnesses. See *Swezey v. State Depart-*

*ment of Social & Rehabilitation Services,* 1 Kan. App. 2d 94, 98, 562 P.2d 117 (1977)."

We accept the findings of the ALJ and hold that there was substantial competent evidence to show violations of both subsections (a)(1) and (a)(13) of K.S.A. 65-1436 and the subsequent imposition of the suspension as authorized by subsection (b)(2) of the same statute.

### *Were Dr. Lacy's due process rights violated?*

Finally, Dr. Lacy argues that his constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and K.S.A. 77-511(b)(2) were violated by the delay in bringing this case to an administrative hearing. The principal prejudice claimed is that Dr. Hall was unable to recall conversations which Dr. Lacy asserts would have justified his actions.

We have consistently held that "where constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review." *Ruddick v. Boeing Co.*, 263 Kan. 494, 498, 949 P.2d 1132 (1997). The record reflects Dr. Lacy did not raise this defense or argument during his administrative hearing. Having failed to raise the issue where a proper and full record could have been developed, we hold he is precluded from doing so at this time. We further point out the issue attempted to be raised is not the claimed constitutional infirmity of a statute or regulation, which could not have been raised before an administrative agency. See *U.S.D. No. 443 v. Kansas State Board of Education,* 266 Kan. 75, 81, 90-91, 966 P.2d 68 (1998).

We have considered all of the arguments raised and hold that the rulings of the ALJ, Board, and district court are affirmed.

LARSON, S.J., assigned.█