(111 P.3d 170)
No. 92,911

DAVID S. LOCKETT, *Appellant*, v. THE UNIVERSITY OF KANSAS, RESIDENCE APPEALS COMMITTEE, *Appellee*.

Opinion filed May 13, 2005.

*Roger H. Templin*, of Payne & Jones, Chartered, of Overland Park, for appellant.

*Rose Marino*, special assistant attorney general, for appellee.

Before HILL, P.J., MARQUARDT and JOHNSON, JJ.

HILL, J.: This case presents the question whether David S. Lockett, a full-time student who came to Kansas to attend law school

at the University of Kansas, should pay tuition at the Kansas resident rate instead of the higher out-of-state rate. In order to pay the resident rate, the rules require Lockett to manifest an intent to make Kansas a permanent home, not only while in attendance at the educational institution, but also indefinitely thereafter. Those regulations also create a presumption that a student enrolled for a full academic program is in Kansas only for educational purposes and places the burden on the student to prove otherwise. Because Lockett has failed to meet that burden, we affirm.

*Background*

David S. Lockett, born in England, came to Kansas in May 1999. He was married in June 1999 and moved to Colorado in July 1999. The couple resided there until March 2002.

Prior to their return to Kansas, Lockett and his wife signed a "Residential New Construction Sale Contract" to build a home in Shawnee, Kansas. The contract stated that purchase of the home was contingent upon his acceptance to the University of Kansas School of Law by February 7, 2002. He was admitted. By March 2002, Lockett and his wife had moved to Kansas. A general warranty deed, dated April 11, 2002, transferred title to the property described in the purchase contract to David Stephen Lockett and Amanda C. Lockett. According to a closing statement, the Locketts finalized the purchase of their home on June 27, 2002.

Lockett began his studies at the Law School in the 2002 summer semester, where he continued his education through the 2002 fall and 2003 spring semesters. Then, in June 2003, Lockett enrolled in a 1-hour credit course at Johnson County Community College and began working part-time for his father-in-law in Overland Park, Kansas.

*Attempts at Reclassification as a Resident*

Lockett's application to be reclassified as a Kansas resident for the 2003 fall semester was first denied by the university registrar. His appeal of that decision was denied by the University of Kansas Residence Appeals Committee (Residence Committee) on August 28, 2003, due to Lockett's failure to demonstrate (1) an intent to

make Kansas his permanent home, and (2) that he was residing in Kansas for purposes other than education. This ruling was affirmed by the district court when it found that substantial competent evidence supported the finding that Lockett moved to Kansas solely for educational purposes. The district court also concluded that Lockett had not satisfied his burden of overcoming the presumption of nonresidency.

Lockett contends that he should be classified as a Kansas resident for six reasons. Since moving to Kansas, he has married, bought a home, and is paying off a note and mortgage. He registered his vehicle in Kansas, most of his income is from Kansas sources, and he filed a Kansas income tax return.

*Review Standards*

When this court examines a district court's decision that reviews an agency action, we must first determine whether the district court observed the requirements and restrictions placed upon it by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), found in K.S.A. 77-601 *et seq.* We then engage in the same review of the administrative agency's action as the district court. See *Lacy v. Kansas Dental Board,* 274 Kan. 1031, 1040, 58 P.3d 668 (2002).

We follow the ruling of our Supreme Court in *Peck v. University Residence Committee of Kansas State Univ.,* 248 Kan. 450, 456, 807 P.2d 652 (1991). When deciding this matter the court stated: "The district court: (1) is restricted to considering the grounds for relief set forth in K.S.A. 77-621(c); (2) must presume the agency's findings valid; (3) may not set aside an agency order merely because the court would have reached a different conclusion if it had been the trier of fact; (4) may set aside the agency's finding when the finding is not supported by substantial competent evidence."

Later, in revisiting this matter, the court ruled:

The court is restricted to considering three things, whether, as a matter of law:

1. The administrative agency acted fraudulently, arbitrarily, or capriciously,

2. the agency's administrative order is supported by substantial evidence, and

3. the agency's action was within the scope of its authority. *Lacy*, 274 Kan. at 1040.

The party who asserts that the agency's decision is invalid bears the burden of proving the invalidity. K.S.A. 77-621(a)(1). Therefore, Lockett has that burden of persuasion.

*Applicable Statutes and Agency Regulations*

The Kansas Board of Regents is required by K.S.A. 76-730 to adopt rules and regulations prescribing criteria or guidelines in order to determine the residence of persons enrolling at the state educational institutions. K.S.A. 2002 Supp. 76-729(c)(4) defines a "domiciliary resident" as one who has a "present and fixed residence in Kansas where the person intends to remain for an indefinite period and to which the person intends to return following absence."

Article 88-2, Kansas Board of Regents, of the Kansas Administrative Regulations sets forth the "Procedures for Determining Residence for Fee Purposes." Specifically, K.A.R. 88-2-1 empowers the registrar of an institution governed by the Kansas Board of Regents to determine the residence status of each student who enrolls in the institution. If a student classified as a nonresident for fee purposes disagrees with the classification, he or she may file an appeal with the registrar. K.A.R. 88-2-2. Students may appeal the registrar's decision to the Residence Committee, which serves as the final body that will conduct an administrative review of student residency status appeals. K.A.R. 88-2-3(a); K.A.R. 88-2-4(a).

For tuition purposes, K.A.R. 88-3-2 defines residence as

"a person's place of habitation, to which, whenever the person is absent, the person has the intention of returning. A person shall not be considered a resident of Kansas unless that person is in continuous physical residence, except for brief temporary absences, and intends to make Kansas a permanent home, not only while in attendance at an educational institution, but indefinitely thereafter as well."

A key provision of the rules that creates a presumption of nonresidency applies to those who come to Kansas and remain enrolled:

"If a person is continuously enrolled for a full academic program as defined by the institution where enrolled, it shall be presumed that the student is in Kansas for educational purposes, and the burden shall be on the student to prove otherwise." K.A.R. 88-3-2(d).

Finally, the determination of residency for tuition purposes is individually decided. "The residence of married persons shall be determined separately for each spouse." K.A.R. 88-3-7.

*Two Issues on Appeal*

Lockett first contends that the Residence Committee's decision was not supported by substantial competent evidence and was, in fact, arbitrary and capricious. He also maintains that the district court and the Residence Committee erroneously interpreted or applied the law by requiring him to demonstrate that he would have moved to Kansas and established residency even if he had not been accepted to the Law School. We deal with the issues in that order.

*Sufficiency of the Evidence*

An agency determination that is said to be without the support of substantial competent evidence is one that is " 'so wide of the mark as to be outside the realm of fair debate.' " *Peck v. University Residence Committee of Kansas State Univ.*, 248 Kan. 450, 456, 807 P.2d 652 (1991) (quoting *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n*, 242 Kan. 470, 474, 749 P.2d 21 [1988]).

The parties agree that, as of the date of his July 2003 application, Lockett had maintained a continuous physical residency in Kansas. At issue is whether Lockett demonstrated intent to reside in Kansas, not only while attending the Law School but also indefinitely thereafter. Lockett applied for admission to the Law School as an out-of-state resident and has continued his education. Lockett included documentation with his application showing that he paid fees as an out-of-state student for the fall 2002 and spring 2003 semesters.

Eight factors are enumerated in K.A.R. 88-3-2(b) for use in determining whether a student is a resident for fee purposes. The factors are given probative value, although they are not to be con-

sidered conclusive, in support of a claim for resident status. A factor is not considered supportive of a claim unless it has existed for at least 1 year before enrollment or reenrollment. The importance of the 1-year provision was explained by our Supreme Court:

"The element of a student's intent is difficult to ascertain. Requiring a student to demonstrate that probative factors have been in existence for at least one year enables the Residence Committee to determine that the K.S.A. 76-729 required intent has been in existence for at least 12 months." *Peck*, 248 Kan. at 463.

These eight factors to be considered when deciding residency are
   "(1) continuous presence in Kansas, except for brief temporary absences, during periods when not enrolled as a student;
   "(2) employment in Kansas;
   "(3) payment of Kansas state resident income taxes;
   "(4) reliance on Kansas sources for financial support;
   "(5) commitment to an education program that indicates an intent to remain permanently in Kansas;
   "(6) acceptance of an offer of permanent employment in Kansas;
   "(7) admission to a licensed practicing profession in Kansas; or
   "(8) ownership of a home in Kansas." K.A.R. 88-3-2 (b).

These eight factors were reviewed by the district court. The facts of this case confirm that there is no dispute that Lockett maintained a continuous presence in Kansas and worked for his father-in-law's business when he was not attending school full time. Lockett filed his 2002 Kansas income tax return as a Kansas resident. The district court held that a law degree could be used to obtain a license anywhere, not just Kansas. There was no evidence of any offers of employment as a lawyer, and Lockett has not yet taken the bar examination; therefore, he has not been admitted to the bar in Kansas. Lockett and his wife did purchase a home in Shawnee contingent upon his acceptance to the Law School.

Concerning the house, the district court found that Lockett's purchase of a home demonstrated intent to remain in Kansas, noting that "it would [have made] more sense to buy a house in Lawrence, KS. Instead, petitioner spent a great deal of money to build a new home in a residential neighborhood of Johnson County, KS." The district court also considered the Residence Committee's arguments that the purchase of the home was made contingent upon Lockett's acceptance to the Law School and that

Lockett did not move to Kansas until he received notification of his acceptance. The district court recognized that it was reasonable for the Residence Committee to find that the contingency clause in the purchase contract demonstrated Lockett's intent to come to Kansas solely to attend school. While the language of the contingency clause could be interpreted differently, this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the factfinder. Conflicting evidence or other inferences are to be disregarded. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 965, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002). We think the district court properly considered all three of the *Lacy* factors. See *Lacy*, 274 Kan. at 1040.

We, in turn, review the Residence Committee's findings for substantial competent evidence. Substantial competent evidence is evidence that possesses something of substance and relevant consequence or furnishes a substantial basis of fact from which issues can reasonably be resolved. See *Depew v. NCR Engineering & Manufacturing*, 263 Kan. 15, 26, 947 P.2d 1 (1997). This court upholds findings supported by substantial evidence even if the record could have also supported contrary findings. *Ford v. Landoll Corp.*, 28 Kan. App. 2d 1, 2, 11 P.3d 59, *rev. denied* 269 Kan. 932 (2000).

A Kansas case, *In re Residency Application of Bybee*, 236 Kan. 443, 691 P.2d 37 (1984), is instructive when considering this matter. Scott Bybee moved to Kansas at the age of 26 and enrolled in Wichita State University to study avionics. He was born in Idaho, where he had also attended school. Nearly 1 year after beginning his studies in Kansas, he applied for resident classification. He had obtained a Kansas driver's license, leased a residence, registered to vote, registered his vehicle, and paid Kansas personal property and income taxes since arriving. He reported working part-time and expressed his intent to remain in Kansas. Regarding his financial support, Bybee indicated that he relied on his employment for a portion, that he received veterans' benefits, and that his father, a resident of Idaho, helped to support him. He later indicated that he had been employed full-time during the summer.

The Supreme Court noted that Bybee's employment goal was in aviation engineering, a reason cited for living in Wichita. However, Bybee had not accepted an offer of permanent employment in Kansas, been admitted to a licensed practicing profession, or bought a home in Kansas. Bybee's employment had not existed for 1 year's duration. The court concluded that Bybee had not fulfilled the requirements of the regent's regulations; therefore, the decision to deny Bybee residency status was not arbitrary, capricious, or unreasonable. 236 Kan. at 448.

Other than of the purchase of his home, the facts which Lockett relies on as evidence of his desire to permanently remain in Kansas could be deemed auxiliary to fulfilling his educational objectives or could be routinely performed by temporary residents of Kansas. Considering that Lockett was burdened with overcoming the presumption that he was in Kansas only for educational purposes, and because he had maintained continuous enrollment in a full academic program, we conclude that the Residence Committee's decision was supported by substantial competent evidence and the district court correctly upheld its conclusion.

Furthermore, we do not believe that the Residence Committee's action was arbitrary and capricious since there is substantial competent evidence in this case. "The arbitrary and capricious test relates to whether a particular action should have been taken or is justified, such as the reasonableness of an agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact." *Pork Motel, Corp. v. Kansas Dept. of Health & Environment,* 234 Kan. 374, 381, 673 P.2d 1126 (1983).

### Erroneous Interpretation of Regulations

Lockett insists that he was denied reclassification to in-state resident status based on speculation of what he would have done had he not been accepted to the Law School. Lockett maintains that the district court, as did the Residence Committee, "erroneously interpreted or applied the law" by requiring him to demonstrate that he would have moved to Kansas and established residency even if he had not been accepted to the Law School. The Resi-

dence Committee insists that Lockett's clear expression of intent to move to Kansas only if accepted to the Law School was only one of the factors considered in determining Lockett had not established his intent to make Kansas his permanent home indefinitely. Like the district court, we cannot consider the employment or residence of Lockett's wife because the regulations forbid it. See K.A.R. 88-3-7.

Interpretations of statutory and regulatory provisions are questions of law over which this court exercises unlimited review. Appellate courts are to grant considerable deference to an agency's interpretation of its own regulations. The agency's interpretation should not be disturbed unless it is clearly erroneous or inconsistent with the regulation. *Schmidt v. Kansas Bd. of Technical Professions*, 271 Kan. 206, 214, 21 P.3d 542 (2001).

In support of his claim that the district court and the Residence Committee applied the wrong standard for determining residency, Lockett quotes one sentence of the district court's memorandum decision. That sentence, in the context of the district court's ruling, follows:

"Unfortunately, the court may not reweigh the evidence. The court must presume the validity of the University's determination, and it can only set aside the University's determination if it is found to be arbitrary and capricious. The court has no formula with which to weigh the evidence and it must look only at the agency's decision. As to the facts of this case, the University's decision is not unreasonable. The University gave substantial evidence that petitioner moved to Kansas solely for an educational purpose. The housing contract provides the University with a substantial basis of fact for its decision. The University could legitimately contend that petitioner may have moved elsewhere if not accepted into the law school. *Without strong evidence that petitioner would have moved to Kansas without being admitted to the law school, the court cannot find the University's decision so 'wide of the mark' as to be beyond fair debate.*

"Petitioner has not met the burden of overcoming the presumption of nonresidency in this case. There is no evidence to support petitioner's contention that the University acted arbitrarily or capriciously." (Emphasis added.)

Considered in its totality, the district court's ruling demonstrates awareness of the standard it was to employ when reviewing the Residence Committee's decision. See *Lacy,* 274 Kan. at 1040 (district court must determine if [1] substantial evidence supported

the agency's order, [2] the agency acted arbitrarily or capriciously; and [3] the agency acted within its scope of authority). The district court's order also showed consideration of the burden placed on Lockett pursuant to K.A.R. 88-3-2(d), which required him to overcome the presumption of being in Kansas solely for educational purposes.

It is well recognized that a state has a legitimate interest in protecting and preserving the quality of its colleges and universities as well as the right of its own bona fide residents to attend such institutions on a preferential tuition basis. See *Hooban v. Boling,* 503 F.2d 648, 651 (6th Cir.), *cert. denied* 421 U.S. 920 (1974) (quoting *Vlandis v. Kline,* 412 U.S. 441, 453, 37 L. Ed. 2d 63, 93 S. Ct. 2230 [1973]). Therefore, a state can "establish such reasonable criteria for in-state status as to make *virtually certain* that students who are not, in fact, bona fide residents of the state, but who have come there solely for educational purposes, cannot take advantage of the in-state rates." (Emphasis added.) *Vlandis,* 412 U.S. at 453-54. Stated differently, "[t]he question to be answered in each case is whether the student came to the state solely to attend school or whether the student intends to make this state his or her home. [Citation omitted.]" *Peck,* 248 Kan. at 464.

We look at the decisions of the Residence Committee and the district court in their entirety. The Residence Committee's denial of Lockett's request for reclassification to resident status was not based upon an incorrect interpretation of the regulations or on one factor alone. We find no merit in this argument.

Affirmed.