No. 28,218.

THE MARQUETTE GRAVEL AND CONSTRUCTION COMPANY, *Appellant,* v. G. E. BENGTSON et al., as the Board of County Commissioners of the County of Saline, *Appellees.*

(274 Pac. 253.)

Opinion filed February 9, 1929.

*J. F. Corder,* of Salina, and *Edwin Anderson,* of McPherson, for the appellant.

*Bryan J. Hoffman* and *H. N. Eller,* both of Salina, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The real point involved in this case is the right of a board of county commissioners to exact and require of a road-building contractor a bond signed by a surety company instead of a personal bond.

Two contracts for road building had been awarded by the board to the plaintiff construction company as the lowest bidder thereon at a public letting duly advertised, and ten days were given under the provisions of R. S. 68-521 to sign contract and furnish statutory bond. Nothing had been said in the public notice of the letting, nor in the plans and specifications, as to the kind of bond required; neither does the statute designate such. The plaintiff construction company endeavored to secure a surety company bond, and at the expiration of the ten days asked further time, and ten additional days were granted by the board. During this time the plaintiff indicated to the board its inability to procure a surety company bond and offered to get a personal bond, but the board insisted upon a bond signed by a surety company. On the last day of the extension, when no bond of any kind was furnished, the board awarded the contracts to the next lowest bidder for nearly $20,000 more than the bid of the plaintiff. The plaintiff then brings this action against the board to recover the five per cent deposit with its bid in certified check, which the board had forfeited after plaintiff's failure to sign contract and furnish bond. The case was tried to the court and the court made findings and conclusions, and rendered judgment for the defendant board for its costs, from which judgment the plaintiff appeals.

The part of R. S. 68-521 which concerns us here is as follows:

"Each bidder shall be required to accompany his proposal with a certified check for five per cent of his bid, payable to the chairman of the board. If the bidder to whom the contract is awarded shall fail to accept and execute the contract and file bond as provided by law, his check shall be forfeited and paid into the school fund, and the board may award the contract to the next lowest responsible bidder. . . . No such contract shall be considered as awarded unless the contractor shall within ten days after the letting enter into contract and shall give bond unto the county in a penal sum equal to the amount of the contract price, conditioned upon the faithful performance of the contract, payable to the county upon failure to comply with the terms of his or their contract: *Provided,* The contractor shall file with the county

clerk said bonds, which shall be approved by the chairman of the board and the county attorney by their signatures indorsed thereon."

The trial court made the following finding of fact:

"Directly after said contract was awarded to the plaintiff, application was made by the plaintiff to a local agent of a surety company for such bond. The surety company to which application for such bond was made refused to bond the plaintiff, and plaintiff was allowed an additional ten days within which to furnish the required bond. Within said ten-day period plaintiff proposed to defendant to furnish a personal bond signed by residents of Saline county, Kansas, and McPherson county, Kansas, who were worth in the aggregate $200,000 over and above all debts, liabilities and exemptions. The board of county commissioners, after having consulted with the state highway engineer, declined and refused to accept a personal bond, and insisted and demanded that plaintiff should furnish a surety company bond. No such personal bond was ever signed or presented to the board of county commissioners, but the plaintiff was able and willing to secure and furnish such personal bond. After the refusal of the board of county commissioners to accept a personal bond the plaintiff made a further effort to secure a surety company bond, but such effort was unavailing. The plaintiff was not able to furnish a surety company bond, as required by the board of county commissioners."

The first conclusion of law made by the trial court is as follows:

"It was not an abuse of discretion for the board of county commissioners to require a surety company bond of the plaintiff and to refuse a personal bond."

The appellant insists that it was arbitrary, unfair, unreasonable and a clear abuse of discretion on the part of the board to require a surety company bond instead of a personal bond; that it was without warrant or authority of law and contrary to public policy, especially when it was not so indicated in the advertisement for bids. The statute above quoted refers to the bond as being one "as provided by law," and that it must be such as "shall be approved by the chairman of the board and the county attorney." The bids of the appellant which were accepted by the board and attached to the petition as exhibits C and D thereof, among other things, state:

"The undersigned further agrees that he will secure a bond in the form prescribed by the board, in the penal sum of the amount of the contract, with a surety to be approved by the board."

The court found that "directly after said contract was awarded to the plaintiff application was made by the plaintiff to a local agent of a surety company for such bond." The appellant was not in any way misled by the failure of the public notice to specify the kind of bond required, but proceeded at once to endeavor to obtain a bond

from a surety company, and the court finds it failed and was unable to furnish such a bond. In its bid it offered to "secure a bond in the form prescribed by the board" and "with a surety to be approved by the board." From these facts we can readily answer in the negative most of the claims of the appellant as to such a requirement being unfair, unreasonable, arbitrary and capricious. Again, it is shown that the board consulted with the county attorney and the state highway engineer in reaching the conclusion as to the proper kind of a bond to be required, and acted on their judgment in prescribing a surety company bond. Since the statute is silent as to this distinction, the board is justified in making a decision as to what in its judgment will be practicable and will safeguard the public interests.

"In the absence of a statutory provision as to the method of letting contracts, a city of the second class may contract for the work through a public letting after an advertisement of the same. The authority to the city to have the work done carries with it the discretion to contract for the work in any practicable method that will safeguard the public interests." (*Middleton v. City of Emporia*, 106 Kan. 107, syl. ¶ 1, 186 Pac. 981.)

The only difference between a surety company bond and a personal bond is one that concerns the sufficiency of the security; all other features of the bonds are alike. With each of them it is a question of the solvency of the sureties and their being able to respond in case of default. This includes not only financial worth above debts, exemptions and liabilities, as stated in the findings as to the persons offered for security, but it also has reference to the question of having property subject to execution. The officers charged with the duty of approving or disapproving a bond are performing a duty that is discretionary, and such a duty that the courts will not compel them to act either way as far as the question of sufficiency or insufficiency is concerned. (*State, ex rel., v. Stockwell*, 7 Kan. 103; *Cox v. Rich*, 24 Kan. 20; *Anderson v. Haslett*, 81 Kan. 532, 106 Pac. 296; *State, ex rel., v. Matassarin*, 114 Kan. 244, 254, 217 Pac. 930.) The question of sufficiency of sureties calls for judgment of the approving officers just as does the question of responsibility of the bidder where the board is directed to select the lowest responsible bidder, and the action of the board in this respect should not be questioned unless it is arbitrary, oppressive, or fraudulent, and we find nothing along those lines in this case, either in the findings of the trial court or in the record of the case.

"The governing body of the city must determine the fact whether one who presents a bid for a contract under the statute above referred to is the lowest responsible bidder, and such determination cannot be set aside by a court unless the action of such tribunal is arbitrary, oppressive or fraudulent." (*Williams v. City of Topeka,* 85 Kan. 857, syl. ¶ 2, 118 Pac. 864.)

Appellant insists that the forfeit could not properly be made by the board nor the contract relet until the expiration of the extended time given to the appellant to procure a bond, and cites cases to show there are no fractions of days in law, and the extension given it included all of the last day of such extension. But wherein was the appellant injured by the reletting of the contract at 2 p. m. instead of the literal close of that day? If it had produced and offered a bond during the remaining hours of that day the case would have been different. Appellant says the board thereby placed itself in a position where it could not any longer accept its bond. Such early action may have made it embarrassing and possibly expensive for the board to have extricated and relieved itself of the reletting contract, but that would not have concerned the appellant if it had furnished its bond within time.

Appellant invokes the doctrine that the courts abhor forfeitures and will not enforce them unless the right thereto clearly appears. The statute above quoted shows plainly and clearly the plan and purpose of the forfeiture, and both parties acted accordingly, the plaintiff in furnishing the certified check and the defendant in accepting it. In the case of *Middleton v. City of Emporia,* above cited, it was said with reference to such certified check in the letting of a waterworks extension contract by a city of the second class:

"After the bidder had notified the city that he was unable to give the bond provided for and carry out the contract, it was competent for the city authorities to declare the deposit forfeited to the city and apply the same to the actual damages sustained by the city through the failure of the bidder to perform his agreement." (Syl. ¶ 4.)

It is perfectly clear in this case, and there is no room for doubt that both parties fully intended the certified check to be used for a forfeiture, and there was nothing needed to effect an automatic forfeiture except the failure of the contractor to furnish a bond as required by statute.

We find no reversible error. The judgment is affirmed.