No. 51,245

R. D. Andersen Construction Co., Inc., *Appellant,* v. City of Topeka, Kansas, a Municipal Corporation, *Appellee,* and Topeka Building and Construction Trades Council, *Intervenor-Appellee.*

(612 P.2d 595)

Opinion filed June 14, 1980.

*Stewart L. Entz,* of Colmery, McClure, Funk, Letourneau & Entz, of Topeka, argued the cause, and *James R. Friend* and *John H. Stauffer, Jr.,* of the same firm, were with him on the briefs for the appellant.

*Douglas S. Wright,* deputy city attorney, argued the cause, and *Dan E. Turner,* city attorney, was with him on the brief for the appellee. *Steve A. J. Bukaty,* of Blake & Uhlig, of Kansas City, argued the cause and was on the brief for intervenor-appellee.

The opinion of the court was delivered by

MILLER, J.: The plaintiff, R. D. Andersen Construction Co., Inc., appeals from the final order of the Shawnee district court, vacating a temporary restraining order and denying the injunctive relief plaintiff sought. The primary issue is whether a city may specify, in its plans and specifications for a public building project, wage rates in excess of "the current rate of per diem wages" required by K.S.A. 44-201.

The facts are brief. The City of Topeka decided to build a new structure to house and exhibit apes at its Gage Park Zoo. Plans and specifications were prepared and approved, and advertisements were run soliciting bids on the project, appropriately labeled "Discovering Apes."

The specifications provide:

"The contractor shall pay to all laborers and mechanics employed in the development of the project not less than the wages prevailing in the locality of the project, as predetermined by the Secretary of Labor of the United States pursuant to the Davis-Bacon Act. Current applicable wage rates are included herein and consist of nine sheets numbered 4814, 4815, 4816, 4817, 20655, 35823, 61187, 6861 and 8471. Contractors shall verify wages or salaries not specifically listed."

The specifications incorporate by reference the Standard Technical Specifications and General Clauses for Street, Sidewalk, Sewers and Misc., Construction manual of the City of Topeka, dated August, 1977, which states:

" 'Current Rate of Per Diem Wages' is defined as the rate of wage paid in the City of Topeka to the greater number of workmen, laborers or mechanics in the same trade, occupation, or work of a similar nature. For the purposes of this sub-section, the current rate of per diem wages shall be defined as and synonymous with required wages and fringe benefits for each job classification on federal and federally assisted construction projects as determined by the Secretary of Labor of the United States Government in the area wage determination decisions for the State of Kansas which are current and effective, the date the contract is executed. Changes in published area wage decisions appear in the Federal Register approximately every 120 days. It shall be the responsibility of the contractor to ascertain and pay those prevailing wage rates and fringe benefits for each pertinent employee classification in order to be in compliance with this sub-paragraph. Job classifications shall be strictly adhered to."

Before the bids were opened, plaintiff filed its petition in this action in Shawnee District Court seeking a temporary restraining order and both temporary and permanent injunctions to enjoin the City from letting any contract for construction of the "Discovering Apes" project at the zoo until the specifications are

changed and the job readvertised. Plaintiff alleged that the specifications fail to comply with the Kansas public project minimum wage law, K.S.A. 44-201, which provides:

" 'The current rate of per diem wages' for the intents and purposes of this act shall be the rate of wage paid in the locality as hereinafter defined to the greater number of workmen, laborers or mechanics in the same trade, occupation or work of a similar nature. In the event that it be determined that there is not a greater number in the same trade, occupation or on similar work paid at the same rate, then the average rate paid to such laborers, workmen or mechanics in the same trade, occupation, or work shall be the current rate. The 'locality' for the purpose of this act shall be the county wherein the physical work is being performed: *Provided,* That where cities of the first or second class are located in said counties, each such city shall be considered a locality.

"Eight hours shall constitute a day's work . . . . Laborers or other persons so employed, working to exceed eight hours per calendar day, shall be paid on the basis of eight hours constituting a day's work. Not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers or other persons so employed.

. . . .

"That the contracts hereafter made by or on behalf of the state of Kansas or by or on behalf of any county, city, township or other municipality of said state with any corporation, person or persons which may involve the employment of laborers, workmen or mechanics, shall . . . contain a provision that each laborer, workman or mechanic employed by such contractor, subcontractor or other person about or upon such public work shall be paid the wages herein provided . . . ."

Plaintiff also contended that to accept bids in accordance with the plans and specifications, which specified Davis-Bacon wages, would contravene K.S.A. 13-1017 which requires cities of the first class to advertise for sealed bids for all public improvement projects for which the estimated cost exceeds $2000, and to award the contract "to the lowest responsible bidder" whose bid is less than the estimate.

A temporary restraining order was entered by the trial court on May 22, 1979, prohibiting the City from letting or entering into a contract based on the "plans and specifications which are in contravention of K.S.A. 44-201." Thereafter the Topeka Building and Construction Trades Council was granted leave to intervene in the action. There being no fact issues, the matter was submitted to the court on briefs of the parties and several *amici curiae.* On June 25, 1979, the trial court filed its memorandum and journal entry. It held that the City did not contravene K.S.A. 44-201 by including the Davis-Bacon wage scale in its specifica-

tions, and that the City did not violate K.S.A. 13-1017 by removing the cost of labor as an element of competitive bidding. The court dissolved the temporary restraining order and denied injunctive relief. Finally, it held that the Trades Council was a "labor organization" as that term is used in K.S.A. 44-811, and it sustained the intervention of the Trades Council in this action under both K.S.A. 60-224(*a*) and (*b*).

It is undisputed that Davis-Bacon wages are somewhat higher than "the rate of wage paid in the locality," computed under K.S.A. 44-201. Plaintiff equates Davis-Bacon wages with union wages. Plaintiff "is not bound by any collective bargaining agreement" and "pays its employees for the work they perform and in accordance with applicable wages laws." Plaintiff states that it pays its employees more than K.S.A. 44-201 wages but less than Davis-Bacon wages.

The Davis-Bacon Act, ch. 411, §§ 1-7, 46 Stat. 1494 (1931), as amended (codified at 40 U.S.C. § 276a to 276a-7 [1976]), requires the Secretary of Labor to determine the minimum wages to be paid laborers and mechanics employed by contractors on federal or federally funded construction projects. Under the published regulations, 29 C.F.R. § 1.1 *et seq.* (1979), the Secretary compiles wage rate information, determines the prevailing wage scales, and publishes them periodically in the Federal Register. "Wages," "scale of wages," "wage rates," "minimum wages," and "prevailing wages" are required by 40 U.S.C. § 276a to include not only the basic hourly rate of pay but also fringe benefits.

Davis-Bacon wages must be paid by all contractors on state and local construction projects when any federal financial assistance is utilized. 42 U.S.C. § 6708. Though many municipal projects are federally funded, this one is not; no federal funds are involved in the "Discovering Apes" project.

Does K.S.A. 44-201 prohibit the City from specifying wage rates and scales in advance, and including them in the specifications and in the contract? Plaintiff contends that it does, and that we so held in *Andersen Constr. Co. v. Weltmer,* 224 Kan. 191, 577 P.2d 1197 (1978), an earlier case brought by this plaintiff.

In *Weltmer,* plaintiff sought by mandamus to compel the Secretary of Administration to open bids submitted for construction of a state building. Bids had been submitted upon specifications

requiring only that wages paid conform to K.S.A. 44-201 which requires the contractor to pay its employees the "current rate of per diem wages" as therein defined; no specific wage scales were included in the specifications. Prior to the opening of bids, the then Attorney General advised the Secretary that the specifications did not comply with 44-201 because specific wage data were not set forth. We found for the plaintiff and issued the writ, holding the Attorney General's interpretation "which would *require* the specifications to include the current rate of per diem wages for each class of workmen" to be "an erroneous and improper expansion of the statute beyond its clear meaning, import, and intent." 224 Kan. at 194. (Emphasis supplied.) The clear holding of *Weltmer* is that the statute does not *mandate* the inclusion of specific wage rates in contract specifications. It does not answer the issue here before us: May the City, if it *elects* to do so, include wage rates in the specifications?

The first paragraph of K.S.A. 44-201 defines "the current rate of per diem wages." The last sentence of the second paragraph of the statute states that "*[n]ot less* than the current rate of per diem wages . . . shall be paid . . . ." (Emphasis supplied.) The last paragraph mandates that all contracts for public works in this state contain a provision that "each laborer . . . shall be paid the wages herein provided."

The statute sets a floor below which wages may not fall. The "wages herein provided" are "[n]ot less than the current rate of per diem wages . . . ." The statute does not prohibit either the requirement or the payment of wages in excess of the "current rate of per diem wages."

Plaintiff challenges the City's use of Davis-Bacon wages on the further ground that Davis-Bacon wages are calculated in a different locality or base area than that provided by K.S.A. 44-201. The City of Topeka is the base area for calculation under the Kansas statute while "the city, town, village, or other civil subdivision of the State, in which the work is to be performed" is the base area under 40 U.S.C. § 276a.

Further, plaintiff complains that the state statute fixes the rate at "the rate of wage paid in the locality . . . to the greater number of workmen, laborers or mechanics in the same trade, occupation or work of a similar nature." Davis-Bacon, on the other hand, requires the Secretary of Labor to determine the

"prevailing" wage, and the regulations provide that this shall be the wage paid to a majority, or if no majority then to the greater number if it constitutes 30% of those employed, and if less than 30% receive the same wage, then the average rate. 29 C.F.R. § 1.2 (a) (1), (2) and (3).

Regardless of the base area or the manner in which Davis-Bacon wages are computed, there is no claim or contention that the Davis-Bacon rate is less than the current rate of per diem wages computed pursuant to K.S.A. 44-201. The City is not attempting to prescribe wages lower than those prescribed by Kansas statute. We perceive no violation of the statute.

Another point of attack by plaintiff is that while the Kansas statute appears to speak only to effective hourly or daily wage rates, Davis-Bacon wages represent union wages plus union fringe benefits. K.S.A. 44-201 does appear to contemplate wages as the hourly rate of pay. Fringe benefits—hospital and medical plans, pensions, and the like—are not mentioned in the Kansas statute nor have they been considered in our cases. *Topeka Bldg. & Construction Trades Council v. Leahy,* 187 Kan. 112, 353 P.2d 641 (1960); *State v. Blaser,* 138 Kan. 447, 26 P.2d 593 (1933); *State, ex rel., v. Construction Co.,* 99 Kan. 838, 162 Pac. 1175 (1917). The Davis-Bacon Act, in contrast, specifically includes fringe benefits. 40 U.S.C. § 276a (b). That act further provides that a contractor obligated to make payment of the prevailing wage as determined by the Secretary of Labor may discharge that obligation by the making of payments in cash, or alternatively, by making irrevocable contributions to a trustee, by assuming an enforceable commitment to bear the cost of the fringe benefits, or by any combination thereof so long as any cash payments, contributions and assumptions total not less than the predetermined prevailing wages.

Whether wages or wages-plus-fringes are considered, the total amount thereof constitutes remuneration to the employee for services performed. Again, there is no contention by plaintiff that the Davis-Bacon scale is by any measure or comparison *less* than that mandated as a floor by Kansas statute. The possibility of the contractor paying less than the wages prescribed by our statute is precluded by specific requirement in the City's Standard Technical Specifications, incorporated by reference in the job specifications, that the contractor "shall observe the provisions of K.S.A. 44-201."

Plaintiff contends that municipal corporations are creations of law and can exercise only such powers as are specifically conferred upon them by law; no legislation specifically authorizes cities to set wage rates of contractor's employees and therefore they cannot do so. This argument ignores the Home Rule Amendment, art. 12, § 5, of the Kansas Constitution, adopted in 1960, by which the people of Kansas conferred upon cities the power to determine their local affairs and government, subject to certain exceptions not here applicable. As we observed in *City of Junction City v. Lee,* 216 Kan. 495, 532 P.2d 1292 (1975), the big impact of the Home Rule Amendment "is that legislative silence on a subject no longer means absence of a city's authority to act in that area. No longer must Kansas cities rely on enabling statutes by the legislature in order to act by ordinance in matters of local concern." 216 Kan. at 498.

The requirement of payment of minimum wages by contractors on public projects, whether by inclusion of a specific wage scale or otherwise, is clearly a matter of both state and local concern. That it is a matter of state concern and the subject of state legislation is no impediment to city action "so long as there is no conflict in terms with state legislation and the state legislature has not pre-empted the field." 216 Kan. at 499. We have discussed pre-emption in *Lee* and in several other cases there cited, and it would add little to our body of law to repeat here what was said there. We find nothing in K.S.A. 44-201 to indicate that the legislature intended to occupy the entire field or to retain exclusive jurisdiction to legislate in the area. The specifications adopted by the City raise the minimum wage requirement fixed by state statute. The City's action goes further than the state legislation but does not conflict with it. This is permissible. See *Garten Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, 549 P.2d 864 (1976); *Leavenworth Club Owners Assn. v. Atchison,* 208 Kan. 318, 492 P.2d 183, 51 A.L.R.3d 1054 (1971); *Blue Star Supper Club, Inc. v. City of Wichita,* 208 Kan. 731, 495 P.2d 524 (1972).

We do not intend by this discussion to imply that the authority of a city as a contracting party is premised solely upon the Home Rule Amendment. Public bodies having authority to enter into contracts for public works or improvements have the authority to

fix the terms of those contracts so long as the terms do not contravene statutory law or public policy. See *Middleton v. City of Emporia,* 106 Kan. 107, 186 Pac. 981 (1920); *Marquette Gravel and Construction Co. v. Bengston,* 127 Kan. 492, 274 Pac. 253 (1929); and 10 McQuillin, Mun Corp §§ 29.05, 29.29 (3d ed. 1966).

Plaintiff contends that the City's inclusion of wages is a violation of K.S.A. 13-1017 which requires cities of the first class to advertise for sealed bids and to award public works contracts to the lowest responsible bidder. Plaintiff contends that some responsible bidders may pay wage scales lower than Davis-Bacon. The City of Topeka has opted out from K.S.A. 13-1017 by adopting a charter ordinance under the Home Rule Amendment, thus the statute is not here controlling. The charter ordinance, however, requires advertising of requests for bids and the letting of contracts to the lowest responsible bidder. Is the inclusion of wage scales a violation of the ordinance? We hold that it is not.

K.S.A. 44-201, as we have held, places a floor below which wage payments may not fall. Contractors who do not wish to pay at those or higher scales are by their own choice eliminated from bidding, although they may be financially or otherwise responsible. Likewise, Davis-Bacon fixes a floor, and contractors who by their own choice do not wish to pay at those or higher scales are eliminated from bidding. Full competitive bids are not required under K.S.A. 44-201 since a wage floor is imposed. The inclusion of Davis-Bacon wages in the specifications simply raises that floor. If a prospective bidder declines to comply with the terms of the contract proposed, whether in payment of wages or in performance of other contract specifications, such a contractor eliminates itself from the bidding and cannot become the "lowest responsible bidder." One of the purposes of advertising for bids and of letting contracts to the lowest responsible bidder is to insure competition. *Williams v. City of Topeka,* 85 Kan. 857, 861, 118 Pac. 864 (1911). There is no showing here that the specifications were designed so that only one firm might bid, or that there was no competition among those bidding the project. We find no conflict between inclusion of wages in the specifications and the lowest responsible bidder requirement.

Plaintiff contends that the inclusion of Davis-Bacon wage scales in the specifications denies plaintiff equal protection under

the law. At the outset it should be stated that K.S.A. 44-201 as well as the Davis-Bacon Act were enacted not for the benefit of contractors but to protect employees by fixing a floor under wages on public projects. Both are expressions of public policy that payment of low wages shall not give a contractor an advantage in bidding or securing a public contract.

Plaintiff pays its employees less than Davis-Bacon wages; therefore it contends that the specifications discriminate against it and in effect deny it and all other nonunion contractors the opportunity to bid. A similar argument could be leveled against K.S.A. 44-201 by contractors who pay less than the current rate of per diem wages.

Davis-Bacon wages, including fringe benefits, as we pointed out earlier, can be satisfied by cash payment. Nothing in the specifications requires a bidder to enter into union collective bargaining agreements; all bidders must but agree to pay the same scale. Whether to bid on the terms proposed is a matter of personal choice. We discern no equal protection violation.

Finally, plaintiff contends that the trial court erred in allowing the Topeka Building and Construction Trades Council to intervene because it lacks capacity or standing, and because it has no interest which may be impaired, a requirement for intervention of right under K.S.A. 60-224(a). The Council is an unincorporated association of labor organizations representing persons employed in the building trades in this state. Its goals are to promote improvements in wages, hours and working conditions of the people whom the various member organizations represent.

K.S.A. 44-811 confers capacity upon an unincorporated labor organization to sue or be sued. "Labor organization" is defined by K.S.A. 1979 Supp. 44-802(1) as:

"[A]ny organization of any kind, or any agency or employee representation committee or plan, which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

Plaintiff contends that we determined that the Council had no capacity to sue or be sued in *Leahy,* 187 Kan. 112. Plaintiff's reliance is misplaced, however, for in *Leahy* we expressly declined to resolve the same disputed question of capacity. There the Council alleged capacity under G.S. 1949, 44-811, and the allegation was challenged by the opposing parties on the basis of

G.S. 1959 Supp. 44-802(1). We did not "pause to decide the disputed question." 187 Kan. at 114.

The definition of labor organization in K.S.A. 1979 Supp. 44-802(1) is very broad. We conclude that the Council falls within at least the outer perimeters of that definition and has capacity to sue and be sued pursuant to K.S.A. 44-811.

The trial court allowed intervention under both K.S.A. 60-224(*a*), intervention as of right, and -224(*b*), permissive intervention. Plaintiff does not argue the permissive intervention issue, and we hold that the trial court quite properly exercised its discretion in granting the Council permissive intervention under -224(*b*). The Council as intervenor sought resolution of the same issue raised by·plaintiff; it raised no new issues; it caused no delay in the proceeding; and no prejudice resulted. We find no error.

We need not decide the intervention of right issue, K.S.A. 60-224(*a*), since we hold permissive intervention was proper.

In summary, we hold that if it wishes to do so, a municipal corporation may specify, in its plans and specifications for a public building project, wages in excess of the "current rate of per diem wages" required by K.S.A. 44-201, and that such action does not contravene that statute nor is it invalid on other grounds raised by the plaintiff; that the Topeka Building and Construction Trades Council is a "labor organization" and as such was properly granted leave to intervene; and that the trial court did not err in refusing injunctive relief.

The judgment is affirmed.