(286 P.3d 216)
No. 106,906

BISSESSARNATH RAMCHARAN-MAHARAJH, *Appellant*, v. DELTON M. GILLILAND, County Counselor, RHONDA BEETS, County Clerk, CARL MEYER, County Commissioner, MIKE PRUITT, County Commissioner, and KEN KUYKENDALL, County Commissioner, *Appellees*.

Opinion filed September 7, 2012.

*Bissessarnath Ramcharan-Maharajh*, appellant pro se.

*Vaughn Burkholder, Tara S. Eberline,* and *James D. Oliver,* of Foulston Siefkin LLP, of Overland Park, for appellee.

Before PIERRON, P.J., GREEN and LEBEN, JJ.

LEBEN, J.: More than 4 years after Osage City had authorized contracts to participate in a federal rails-to-trails project, Bissessarnath Ramcharan-Maharajh submitted petitions seeking to put the project before the voters for approval—or disapproval—in a referendum. But referendums are available in Kansas only when specifically authorized by statute, and no statute authorized the referendum Ramcharan sought. The district court therefore properly dismissed Ramcharan's lawsuit, which sought to force county officials to put the referendum on the ballot.

## FACTUAL BACKGROUND

In 2004, the Osage City Council passed a resolution authorizing the mayor to apply to the Kansas Department of Transportation for funds to participate in a federal rails-to-trails project, which converts unused railroad tracks into recreational trails. This particular project would convert some unused tracks in Osage City into pedestrian and bicycle trails. In January 2006, the city council passed resolutions that authorized the mayor to enter into a lease and a contract for design services, and the council passed another resolution that authorized the city manager to enter into a contract with the Kansas Department of Transportation that assigned responsibilities for completing the project.

More than 4 years later, in March 2010, Bissessarnath Ramcharan-Maharajh attended an Osage City Council meeting and expressed concern about the rails-to-trails project. The next month, Ramcharan presented the county clerk with a petition calling for a public vote on the four resolutions, which had passed in 2004 and 2006. The petition proposed a ballot question of whether the city's resolutions to construct the trails at a cost of more than $1 million should be effective.

In August 2010, the county clerk notified Ramcharan that the clerk was declining to review the signatures because Ramcharan's petition didn't present a question that could be the subject of an election. The same day, the county counselor notified Ramcharan

that there was no legal basis in his petition that would compel an election.

Ramcharan filed suit in November 2010, seeking a writ of mandamus that would compel the clerk to accept, verify, and certify the names on the petition. Ramcharan named the county clerk, the county counselor, and three county commissioners as respondents in his petition.

The district court granted the county's motion for judgment on the pleadings and dismissed Ramcharan's petition. Ramcharan has appealed that dismissal to this court.

ANALYSIS

Ramcharan raises a number of arguments on appeal, but we find three broad propositions decisive. First, referendums are only authorized in Kansas where provided for by statute, and no statute authorizes the referendum Ramcharan seeks. Second, the city has no authority to agree to a referendum that's not authorized by Kansas statute, so even if—as Ramcharan alleges—the city agreed to the referendum, the agreement wouldn't be valid. Third, the First Amendment doesn't guarantee a right to referendum, so the inability to put these city actions to public vote in a referendum doesn't violate Ramcharan's constitutional rights. We will discuss the specific arguments Ramcharan makes on appeal in the context of these rules.

Because Ramcharan's suit was dismissed on a motion for judgment on the pleadings, we review the matter independently, without any required deference to the district court. *Wagner v. State*, 46 Kan. App. 2d 858, 860, 265 P.3d 577 (2011). We must accept as true the factual allegations made in Ramcharan's petition; we then decide whether he has stated a potentially valid claim based on those facts. *Purvis v. Williams*, 276 Kan. 182, 186-87, 73 P.3d 740 (2003).

Ramcharan seeks mandamus as a remedy; mandamus is an order that some public official or lower court perform a specified legal duty. See K.S.A. 60-801. Someone seeking an order (or writ) of mandamus must show that the respondent has a clear legal duty to take the action at issue. *Kansas Medical Mut. Ins. Co. v. Svaty*,

291 Kan. 597, 620, 244 P.3d 642 (2010). Whether to issue a mandamus order depends on statutory interpretation regarding the duties of the officials involved; we also review those matters independently, without any required deference to the district court. 291 Kan. at 620.

Before discussing the issues, we also place in context what Ramcharan asks the court to order the public officials to do, *i.e.*, hold a referendum. A referendum is a public vote—secured by a petition signed by a certain number of voters—approving or rejecting an action already taken (or, in some states, merely proposed) by a governmental body.

There is another process for voter input in government—the initiative process—that's sometimes confused with referendums. The difference is that a referendum is a public vote taken in response to a measure initiated by the government, while in the initiative process citizens develop the proposal that is then placed on the ballot for public approval. See generally Eskridge, Frickey & Garrett, Cases and Materials on Legislation: Statutes and the Creation of Public Policy, pp. 523-24 (4th ed. 2007). Ramcharan has not suggested that his proposal be considered as an initiative.

## I. *No Statute Authorizes the Referendum Ramcharan Seeks.*

Local governments in Kansas are legal creations of the State of Kansas, and local governments have only the authority granted to them by the state or by the people (through the state constitution). See Heim, *Home Rule Power for Cities and Counties in Kansas*, 66 J.K.B.A. 26, 27-28 (Jan. 1997); Clark, *State Control of Local Government in Kansas*, 20 U. Kan. L. Rev. 631, 654-55, 658-59 (1972). The Kansas Constitution gives broad home-rule powers to cities, but the home-rule provision in the Kansas Constitution provides for "referendums only in such cases as prescribed by the legislature." Kan. Const. art. 12, § 5(b). So if there is to be any authority for a city to hold a referendum, that authority must come from the legislature: aside from home-rule authority, cities have only such authority as has been granted by the state, and the home-rule authority given to Kansas cities specifically limits referendums to cases "prescribed by the legislature."

Initiatives in Kansas are authorized by one broad statute, K.S.A. 12-3013. But referendums, brought about by protest petitions, are authorized by about 40 different statutes concerning specific subjects. Protest petitions are most commonly used to force a referendum when a city government authorizes a tax or a bond issue. See K.S.A. 12-137; Heim, Kansas Local Government Law §§ 5.70, 5.90-5.91(4th ed. 2009). Ramcharan points to no subject-specific statute authorizing a referendum here.

Instead, Ramcharan cites to K.S.A. 2011 Supp. 25-3601, a procedural statute that applies only when some *other* statute provides authority for a referendum. K.S.A. 2011 Supp. 25-3601 provides a format for submitting ballot questions and a process for getting official approval of questions before getting citizen signatures on petitions seeking a public vote. But the statute applies only when "a petition is required or authorized as part of the procedure applicable" to the governmental entity involved. Some statute other than K.S.A. 2011 Supp. 25-3601 must provide the authority for a referendum; K.S.A. 2011 Supp. 25-3601 is purely procedural.

One of the provisions of K.S.A. 2011 Supp. 25-3601 provides that the form of the proposed ballot question be submitted for approval to the county counselor or to the county or district attorney, who has 5 calendar days to respond. K.S.A. 2011 Supp. 25-3601(a). If the response is not made within that time limit, then "the *form* of the question shall be deemed in compliance" with legal requirements. (Emphasis added.) K.S.A. 2011 Supp. 25-3601(a). Ramcharan suggests that this part of K.S.A. 2011 Supp. 25-3601 provides authorization for a referendum since the county counselor failed to respond to Ramcharan's proposed ballot question within 5 days. But even if the county counselor failed to respond, that only confers approval of the *form* of the question, not the right to place it before the people in a referendum. K.S.A. 2011 Supp. 25-3601 simply doesn't provide substantive authority for placing a referendum before the voters.

II. *A City Can't Agree to Have a Referendum That's Not Authorized by Statute.*

Apart from any statutory authority, Ramcharan contends that

Osage City entered into a valid contract with him under which a referendum must be held. He says this agreement was reached during a city council meeting in 2010, and he provides this description of the terms agreed upon:

"If Ramcharan could show the City Council that a substantial number of the electorate would like to have the proposed continuation of the expenditure of tax dollars on the Rails to Trails project placed on a ballot, then the city of Osage City will have an election on whether the resolutions authorizing the expenditure would continue to be effective or not."

The minutes of the city council's March 9, 2010 meeting noted that Ramcharan spoke to the council and that the mayor told Ramcharan "that there would be approximately 60 days before any further action is taken and that would be substantial time for Mr. Ramcharan to get his petition in order prior to any action." The district court found that there was no evidence of any contract between the city and Ramcharan, and our record certainly doesn't provide evidence of one.

But even if the city *had* agreed to a referendum if Ramcharan got enough signatures, cities are special entities that may not enter into contracts that contravene statutes or public policy. See *Anderson Construction Co. v. City of Topeka*, 228 Kan. 73, 79-80, 612 P.2d 595 (1980). As we've noted previously, the Kansas Constitution provides for referendums "*only* in such cases as prescribed by the legislature." (Emphasis added.) Kan. Const. art. 12, § 5(b). The Kansas Constitution is the preeminent declaration of Kansas public policy, so we are once again left with the proposition that unless a statute authorizes this referendum, it can't be had. The city has no power to provide for a referendum that's not authorized by statute since the city's home-rule authority provides for referendums "only" as legislatively authorized. A city's agreement to put a referendum on the ballot would contravene public policy and thus be invalid unless there's statutory authority for the referendum. Since no statute authorizes the referendum Ramcharan proposed, any agreement by the city to put it on the ballot would be invalid.

III. *There Is No First Amendment Right to Referendums.*

Even if no statute authorizes his proposed referendum, Ramcharan argues that statutory authority isn't needed because his right "to petition the Government for a redress of grievances" is guaranteed by the First Amendment. He's correct, of course, that he has a right to petition the government, seeking government action in response to his complaints or suggestions. But the First Amendment does not require that the government *respond* to a citizen's petition. As the United States Supreme Court has said, "Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, association, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minnesota Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285, 104 S. Ct. 1058, 79 L. Ed. 2d 299 (1984); see 2 Tribe, American Constitutional Law § 13-17, p. 1095 (2d ed. 1988).

Nor does the United States Constitution require that states provide for initiative and referendum rights. See *Kendall v. Balcerzak*, 650 F.3d 515, 523 (4th Cir. 2011); *Molinari v. Bloomberg*, 564 F.3d 587, 597 (2d Cir. 2009); *American Constitutional Law Foundation v. Meyer*, 120 F.3d 1092, 1100 (10th Cir. 1997). Rather, the right to initiative and referendum in a city or state derives from a state constitution or statute, not from federal law. See *Loonan v. Woodley*, 882 P.2d 1380, 1383 n.3 (Colo. 1994); *In re Initiative Petition No. 349*, 838 P.2d 1, 9 (Okla. 1992).

Where a state establishes initiative and referendum rights, the state has the power to provide reasonable restrictions on access to the ballot. *Meyer*, 120 F.3d at 1097. The state's important interest in regulating ballot access generally is sufficient by itself to justify reasonable, nondiscriminatory ballot-access restrictions. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364-65, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997). Ramcharan has not shown that there's anything unreasonable in providing for protest petitions in some situations but not in others, including his attempt to seek a referendum over Osage City's decisions to participate in the federal rails-to-trails program.

In addition to his broad argument that the First Amendment petition right guarantees his right to the referendum he seeks, Ramcharan also argues that the varying requirements under different statutes for different numbers of signatures to get something on the ballot constitutes an undue burden upon him. Ramcharan is correct that more signatures are required to get some things on the Kansas ballot than others. But we return to our conclusion that *no* statute authorizing a referendum applies to his case. We see no valid constitutional objection in Ramcharan's argument that there are differing petition requirements in statutes that have no application here.

Finally, on the constitutional front, Ramcharan also argues that it violated his due-process rights to dismiss his case without an evidentiary hearing. In support of his argument, he cites a habeas corpus case that applies a familiar rule in those cases that an evidentiary hearing is ordinarily required if the person being held in custody alleges facts that, if true, would warrant relief. But Ramcharan seeks a writ of mandamus requiring a government official to act, not a writ of habeas corpus ordering the release or change in treatment of a prisoner. Due process doesn't require an evidentiary hearing when the issue raised is purely a matter of law and we accept as true the allegations Ramcharan made in his petition. See *Chester Water Authority v. Public Util.*, 581 Pa. 640, 653-54, 868 A.2d 384 (2005).

## CONCLUSION

No statute authorized the referendum Ramcharan sought; no constitutional provision requires Kansas to provide for referendums where not authorized by statute; and a Kansas city may not agree to a referendum that the legislature hasn't provided for. The district court properly dismissed Ramcharan's petition.

The district court's judgment is affirmed.