No. 123,277

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PRETTY PRAIRIE WIND LLC, et al.,
*Appellants*,

v.

RENO COUNTY and BOARD OF RENO COUNTY
COMMISSIONERS,
*Appellees*.

SYLLABUS BY THE COURT

1.

Kansas law requires an appellee to cross-appeal a district court's adverse decisions before those rulings may be challenged on appeal. The failure to cross-appeal a district court's adverse decision creates a jurisdictional bar preventing appellate review.

2.

While a cross-appeal is necessary to bring other adverse rulings before the appellate courts, it is not generally required when a party is merely challenging the district court's reasoning underlying a decision already subject to appeal.

3.

The requirements of K.S.A. 25-3601 through K.S.A. 25-3608 do not apply to zoning protest petitions. Those petitions are governed by K.S.A. 2021 Supp. 12-757(f)(1).

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed August 26, 2022. Affirmed.

*Timothy J. Sear*, of Polsinelli PC, of Kansas City, Missouri, *Alan Claus Anderson*, of Kansas City, Missouri, and *Gerald L. Green*, of Gilliland Green LLC, of Hutchinson, for appellants.

*S. Eric Steinle*, of Martindell Swearer Shaffer Ridenour LLP, of Hutchinson, and *Joseph P. O'Sullivan*, Reno County Counselor, for appellees.

*Patrick B. Hughes* and *Susan M. Locke*, of Adams Jones Law Firm, P.A., of Wichita, for intervenors Lynn Thalmann, et al.

Before SCHROEDER, P.J., WARNER and ISHERWOOD, JJ.

WARNER, J.: This appeal concerns the statutory requirements for petitions protesting proposed zoning changes. The current dispute began when Pretty Prairie Wind LLC sought a conditional-use permit from the Board of Reno County Commissioners to operate a wind farm. Several local property owners challenged Pretty Prairie's permit application by filing zoning protest petitions, triggering a heightened voting requirement to approve the permit. The Board of County Commissioners' vote failed to meet this requirement, resulting in the denial of Pretty Prairie's application.

Pretty Prairie filed suit, challenging the form of the protest petitions. The district court concluded that the protest petitions were valid under Kansas law and entered judgment for the County. After carefully reviewing the record before us and the parties' arguments, we agree with the district court's decision to grant judgment in favor of the County, albeit for different reasons. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2019, Pretty Prairie applied for a conditional-use permit to build a wind farm near Haven in Reno County. After receiving a report from county staff, the Reno County Planning and Zoning Commission held several public hearings and received public comments concerning the proposed permit. That April, the Commission

2

recommended to the three-member Board of County Commissioners that the application be denied.

Under Kansas law, the vote needed to overcome a planning commission's recommendation depends on the community's reaction to the recommended outcome. In most instances, a board of county commissioners can overrule a planning commission's recommendation by a two-thirds majority vote. See K.S.A. 2021 Supp. 12-757(d). But when the owners of at least 20% of the land within 1,000 feet of the property at issue sign and file protest petitions within 14 days after the end of the public hearings, a three-fourths majority is needed to overrule the recommendation. K.S.A. 2021 Supp. 12-757(b), (f)(1); Reno County Zoning Regulations § 20-102 (2016).

The Board of Reno County Commissioners has three members. Practically speaking, this means that a vote of two of the three members is necessary to overcome the Reno County Planning and Zoning Commission's recommendations in most circumstances. But when a sufficient proportion of landowners file petitions protesting a proposed zoning action, a decision rejecting a recommendation requires the vote of all three Board members.

Reno County residents began organizing to submit protest petitions against the wind farm, holding several community events to mobilize neighboring landowners. The protest petitions provided at these events included the date, the protesting landowner's name, a description or address of the landowner's property, and the landowner's signature. The petitions also included a section for the signature and address of a "circulator," along with a declaration stating, "I declare under penalty of perjury I am a circulator of this petition, duly qualified, and personally witnessed each signature on this page."

Shortly before its June 2019 meeting, the Board determined that 114 valid petitions—from owners representing 46% of the property within the 1,000-foot

boundary—had been filed, triggering the three-fourths majority requirement. Of these petitions, approximately 110 included a circulator's signature. The Board voted 2-1 to approve the permit, falling short of the required vote to override the planning commission's recommendation. As a result, the permit was denied.

Pretty Prairie filed a petition in district court challenging this outcome, raising procedural and substantive claims. From a procedural standpoint, Pretty Prairie asserted that the protest petitions were invalid because the circulators failed to comply with K.S.A. 25-3602(b)(4), a statute governing petitions submitted for elections; this statute requires a circulator to verify before a notarial officer that the circulator witnessed each person sign a petition. Pretty Prairie argued that the protest petitions were void because the circulator signatures were not notarized, so the Board's 2-1 vote was sufficient to overrule the Commission's recommendation. Turning to the substance of the Board's decision, Pretty Prairie asserted that the decision to deny the permit was unreasonable.

As the case progressed before the district court, Pretty Prairie sought partial summary judgment on its procedural claim. The County, as well as various adjacent landowners (the Intervenors) who were permitted to intervene as defendants, opposed this request. The district court denied Pretty Prairie's motion. Most relevant to this discussion, the court found that the notarial-affirmation requirement under K.S.A. 25-3602(b)(4) applied to zoning protest petitions, but the circulators' declaration on the protest petitions substantially complied with that statute.

Following the ruling, Pretty Prairie sought to file an interlocutory appeal, which the court denied. Pretty Prairie then dismissed its outstanding substantive claim and asked that final judgment be entered on its procedural claim. The court granted this request, and Pretty Prairie appealed. Neither the Intervenors nor the County filed a cross-appeal.

DISCUSSION

The primary point of contention in this appeal is the standard that governs petitions protesting potential zoning changes. Pretty Prairie asserts—and the district court found—that protest petitions must comply with Kansas statutes governing election petitions, K.S.A. 25-3601 through K.S.A. 25-3608. The County argues that the protest petitions are governed solely by K.S.A. 2021 Supp. 12-757.

Unraveling these issues turns on the language and interplay of these various statutory provisions. Statutory interpretation is a legal question over which appellate courts' review is unlimited. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). Our primary aim when interpreting statutes is to give effect to the legislature's intent, expressed through the statutory language it adopted. *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 2, 374 P.3d 680 (2016). We thus follow the statutes' plain language—we do not add or ignore statutory requirements, and we give ordinary words their ordinary meanings. 304 Kan. 755, Syl. ¶ 3.

When legislative intent is unclear from the statute's text, courts employ canons of construction to ascertain the legislature's aim. Primary among these is the presumption that the legislature does not intend to enact meaningless legislation, and that statutory language should be construed to avoid unreasonable or absurd results. See *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). In a similar vein, courts attempt to reconcile conflicting statutes and bring them into workable harmony, if possible. See *Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1066, 390 P.3d 504 (2017). Statutes that specifically address a matter tend to control over a more general statutory provision. *State ex rel. Schmidt v. Governor Kelly*, 309 Kan. 887, 898, 441 P.3d 67 (2019).

Applying these principles here, we agree with the County that zoning protest petitions are governed by K.S.A. 2021 Supp. 12-757, not by K.S.A. 25-3601 et seq. While most of the protest petitions filed in this case contained a signature and declaration for the petition circulator, those sections were not required by Kansas law. Because these petitions comply with K.S.A. 2021 Supp. 12-757, the district court correctly granted judgment to the County, even though it employed different reasoning to reach that result. Accord *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) ("'If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision.'").

1. *The absence of a cross-appeal does not constrain our review of the district court's summary-judgment ruling.*

Before explaining our analysis of these relevant statutes, we must consider a threshold jurisdictional question. Pretty Prairie asserts that we do not have jurisdiction to consider this statutory question—which Kansas statute governs the protest petitions—at all because the County and Intervenors did not cross-appeal that finding. According to Pretty Prairie, in the absence of a cross-appeal, this court is constrained by the district court's conclusion as to which statute applies. Thus, the only issues in this appeal are whether protest petitions must strictly or substantially comply with K.S.A. 25-3602 and whether the petitions here satisfied that level of compliance. We disagree.

In denying Pretty Prairie's summary-judgment motion, the district court found that the zoning protest petitions were valid. To arrive at that ruling, the court made several intermediate determinations. Most notably, the court concluded:

- that K.S.A. 25-3602, not K.S.A. 2021 Supp. 12-757, established the requirements for zoning protest petitions;

6

- that only substantial compliance (not strict compliance) with K.S.A. 25-3602 was required for the protest petitions to be valid; and

- that the protest petitions substantially complied with that statute.

The County and the Intervenors present two alternative bases for why the district court's ultimate ruling—the zoning protest petitions were valid—was correct. They claim that K.S.A. 2021 Supp. 12-757, not K.S.A. 25-3602, governs the protest petitions. And they assert that if the district court's statutory analysis of K.S.A. 25-3602 was correct, then it correctly determined that the protest petitions complied with that statute.

It is true—as Pretty Prairie indicates—that Kansas law requires an appellee to cross-appeal a district court's adverse decisions before those rulings may be challenged on appeal. *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008); see K.S.A. 2021 Supp. 60-2103(h) (cross-appeal required when "the appellee desires to have a review of rulings and decisions of which such appellee complains"). The failure to cross-appeal a district court's adverse decision creates a jurisdictional bar preventing appellate review. *Lumry v. State*, 305 Kan. 545, 555, 385 P.3d 479 (2016).

But while a cross-appeal is necessary to bring other adverse *rulings* before the appellate courts, it is not generally required when a party is merely challenging the district court's *reasoning* underlying a decision already subject to appeal. See *Lacy v. Kansas Dental Board*, 274 Kan. 1031, 1044, 58 P.3d 668 (2002); *Williams v. Amoco Production Co.*, 241 Kan. 102, 116, 734 P.2d 1113 (1987). In *Lacy*, for example, the Kansas Supreme Court upheld a district court's decision under a different statutory provision than the one the district court relied on. 274 Kan. at 1044. While the district court's conclusion was correct, its reasoning was not—the provision that it thought resolved the question did not apply, but another provision did and led to the same result. 274 Kan. at 1044.

In its brief, Pretty Prairie cites *Reinecker v. Board of Trustees*, 198 Kan. 715, 722, 426 P.2d 44 (1967), for its assertion that the County and Intervenors were required to cross-appeal the district court's conclusion that K.S.A. 25-3602—not K.S.A. 12-757—applies to protest petitions. But *Reinecker* is readily distinguishable. In that case, various landowners appealed the denial of an injunction in an eminent-domain action. In its response brief, the appellee argued that although the district court had ultimately ruled in its favor at trial, the court erred in admitting certain trial testimony. The Kansas Supreme Court found that the evidentiary challenge was not properly before the court since no cross-appeal had been filed. 198 Kan. at 722. Thus, the issue barred by the absence of a cross-appeal in *Reinecker* was separate and distinct from the questions on appeal. That is not the case here.

The Kansas Supreme Court revisited the nature of cross-appeals in *Cooke*. That case had yo-yoed between the district and appellate courts several times. In the most recent appeal, the appellant, Cooke, challenged the district court's distribution of settlement proceeds. Cooke argued that the statute of limitations barred the district court's action; the opposing party, Gillespie, asserted that this question was not properly before the court because Cooke had not cross-appealed the district court's adverse ruling on that question during a previous appeal. Our Supreme Court agreed with Gillespie. The court explained that "Cooke failed to cross-appeal an earlier, and clearly adverse, ruling: Judge Kennedy's denial of her summary judgment motion that was based upon the statute of limitations." 285 Kan. at 755.

In reaching this conclusion, the *Cooke* court reviewed several earlier decisions discussing the necessity of a cross-appeal. In each instance, the Supreme Court had held that an issue must be presented through a cross-appeal when it arises from a district court's interim, adverse ruling. See, *e.g.*, *Scammahorn v. Gibraltar Savings & Loan Ass'n.,* 197 Kan. 410, 416 P.2d 771 (1966) (party must file cross-appeal to challenge

8

district court's denial of a motion to dismiss); *James v. City of Pittsburg*, 195 Kan. 462, 407 P.2d 503 (1965) (same); *Chavez v. Markham*, 19 Kan. App. 2d 702, 875 P.2d 997 (1994), *aff'd* 256 Kan. 859, 889 P.2d 122 (1995) (party must cross-appeal denial of a motion for summary judgment).

As these cases illustrate, cross-appeals are always necessary when an appellee is challenging some adverse "ruling" or "judgment" against that party. *Cooke*, 285 Kan. 748, Syl. ¶ 2; *Williams*, 241 Kan. at 116. The law is admittedly less clear as to when a party must cross-appeal some other determination, however.

In many cases, courts have considered alternative reasons supporting the district court's ultimate decision when no cross-appeal was filed. See *Gannon*, 302 Kan. at 744 (denial of motion to intervene was correct for a different reason than that given by the district court because the motion was untimely filed); see also *Atkins v. Webcon*, 308 Kan. 92, 97, 419 P.3d 1 (2018) ("'[W]hen an agency tribunal reaches the right result, its decision will be upheld even though the tribunal relied upon the wrong ground or assigned erroneous reasons for its decision.'"). But in a few cases, appellate courts have found that the absence of a cross-appeal precludes review of a district court's adverse factual finding or of the court's rejection of an alternative basis for its decision. See *Lumry*, 305 Kan. at 554 (because appellee had not cross-appealed district court's factual finding that appellee was an employer, appellate court did not have to consider that question); *State v. Novotny*, 297 Kan. 1174, 1181, 307 P.3d 1278 (2013) (State did not cross-appeal district court's finding that the photo lineup was unnecessarily suggestive). But see *State v. Bates*, 316 Kan. ___, 513 P.3d 483 (2022) (affirming the district court's denial of suppression motion for alternative legal grounds previously rejected by the district court with no mention of need for cross-appeal).

9

This difference in treatment may be interesting in an academic sense. But we need not finally resolve the scope of all potential cross-appeals here. Instead, we find the facts of this case demonstrate that no cross-appeal is necessary for two reasons.

*First*, there was no adverse ruling from which the County or Intervenors could seek our review. The district court made two rulings relevant to this appeal. It denied Pretty Prairie's summary-judgment motion, and then it granted the parties' agreed-upon motion to dismiss Pretty Prairie's remaining claims so that Pretty Prairie could appeal the summary-judgment denial. Neither ruling was adverse to the County or the Intervenors—in both instances, judgment was entered in their favor on the merits.

*Second*, the statutory analysis of K.S.A. 25-3602 and K.S.A. 2021 Supp. 12-757 is key to deciding Pretty Prairie's appeal. Determining whether the district court erred in denying summary judgment—that is, in deciding that the protest petitions were valid—requires determining what statute governs, and in turn what standards govern protest petitions for conditional-use permits. Pretty Prairie apparently perceived the importance of this statutory question, as it presented and pressed the issue in its opening brief. To hold otherwise would require this court to engage in a bizarre and potentially misleading discussion—to conduct a legal analysis under a statute that may not, in actuality, apply. This statutory analysis is thus different from other determinations, which have been involved in case-specific factual findings, where Kansas courts have found cross-appeals necessary. See *Lumry*, 305 Kan. at 554; *Novotny*, 297 Kan. at 1181.

Under these circumstances, we are not persuaded by Pretty Prairie's argument that the absence of a cross-appeal limits our review of the district court's summary-judgment ruling. We thus proceed to our analysis of the relevant statutory provisions.

10

2. *K.S.A. 2021 Supp. 12-757(f)(1), not K.S.A. 25-3602, governs the zoning protest petitions.*

As we have indicated, the primary question in this appeal is whether K.S.A. 25-3602 applies to zoning protest petitions. The district court found the petition requirements in K.S.A. 25-3602(b) apply to zoning protest petitions under K.S.A. 2021 Supp. 12-757. In reaching this decision, the court noted the absence of many specific requirements in K.S.A. 2021 Supp. 12-757(f)—particularly with regard to circulator certifications—for protest petitions' signatures. The court also noted that K.S.A. 25-3601(c) states the section applies to petitions "protesting" an ordinance or resolution.

On appeal, Pretty Prairie supplements this reasoning by pointing to *Deffenbaugh Disposal Services, Inc. v. City of Kansas City*, No. 63,131, unpublished opinion filed June 6, 1989 (Kan. App.), and Kansas Attorney General Opinion No. 2003-18, which both assumed—without deciding—that K.S.A. 25-3602 applies to zoning protest petitions. The County and Intervenors note that we are not bound by these decisions. They also argue that K.S.A. 25-3602 relates specifically to petitions in the elections context, and applying K.S.A. 25-3602 to a protest petition would require courts to disregard most of that statute's requirements.

K.S.A. 25-3601 through K.S.A. 25-3608 govern petitions "required or authorized as part of the procedure applicable to the state as a whole or any legislative election district or to any county, city, school district[,] or other municipality." K.S.A. 25-3601(a). A previous panel of this court described K.S.A. 25-3601 as "a procedural statute" that "provides a format for submitting ballot questions and a process for getting official approval of questions before getting citizen signatures on petitions seeking a public vote." *Ramcharan-Maharajh v. Gilliland*, 48 Kan. App. 2d 137, 141, 286 P.3d 216 (2012), *rev. denied* 297 Kan. 1247 (2013). K.S.A. 25-3601 and K.S.A. 25-3602 include several requirements for petitions to be effective. For example:

11

- K.S.A. 25-3601(c) sets forth the "form of any question in a petition requesting an election on or protesting an ordinance, or resolution, adopted by" the relevant governing body must take.

- K.S.A. 25-3602(b) requires a petition to include various information, such as the question "which petitioners seek to bring to an election" and the political or taxing subdivision "in which an election is sought to be held." K.S.A. 25-3602(b)(1), (2).

- K.S.A. 25-3602(b)(3) requires a petition to include the statement, "'I have personally signed this petition. I am a registered elector of the State of Kansas and of [the relevant political subdivision] and my residence address is correctly written after my name.'"

- If a circulator is involved in the petition process, K.S.A. 25-3602(b)(4) requires the petition contain a recital stating the circulator (as defined by K.S.A. 25-3608) is qualified as a circulator and personally witnessed the signers sign the petition. The circulator's recital must be "verified upon oath or affirmation before a notarial officer in the manner prescribed by the revised uniform law on notarial acts." K.S.A. 25-3602(b)(4).

These requirements do not apply to petitions in all contexts. For example, K.S.A. 25-3601(f) explicitly excludes recall petitions and grand-jury petitions from complying with these provisions. And K.S.A. 25-3601(d) states that "[w]hen any other statute imposes specific requirements which are different from the requirements imposed by K.S.A. 25-3601 et seq., and amendments thereto, the provisions of the specific statute shall control."

K.S.A. 12-757 governs zoning decisions. K.S.A. 2021 Supp. 12-757(f)(1) states that protest petitions for a potential zoning decision must be "filed in the office of the city

clerk or the county clerk within 14 days after the date of the conclusion" of the planning commission's public hearing. If protest petitions "signed . . . by the owners of record of 20% or more of the total real property within the area required to be notified by this act" are filed, then a three-fourths vote is required to pass the proposed amendment. K.S.A. 2021 Supp. 12-757(f)(1). For zoning outside city limits, all property owners living within at least 1,000 feet of the area to be altered must be notified. K.S.A. 2021 Supp. 12-757(b). Reno County's zoning ordinance contains a similar requirement. See Reno County Zoning Regulations § 20-102 (requiring a protest petition to be "duly signed and acknowledged by the owners").

The County points out several textual indications that the legislature did not intend for K.S.A. 25-3601 through K.S.A. 25-3608 to apply to zoning protest petitions. We agree that the language of these statutes concerns elections and signature requirements for electors. See generally K.S.A. 25-3601 (referencing elections and the county election officers throughout); K.S.A. 25-3602(b) (establishing signature requirements for "electors"); K.S.A. 25-3604 (setting forth the method of verifying that the signatures are provided by registered voters). Even K.S.A. 25-3601(f), which specifically excludes recall petitions and grand-jury petitions from its requirements, concerns petitions that involve elections or electors' signatures. See K.S.A. 25-4301 et seq. (governing recall of elected officials); K.S.A. 2021 Supp. 22-3001(c) (grand jury can be summoned by a petition from a requisite number of qualified "electors").

These "election" and "elector" requirements do not make sense for zoning protest petitions. In the zoning context, people signing protest petitions must own property in or adjacent to the area to be rezoned. K.S.A. 2021 Supp. 12-757(f)(1). There is no requirement that those property owners be registered to vote or even be Kansas residents. Thus, most requirements in K.S.A. 25-3601 and 3602 could not apply. The only potential exception is the circulator verification in K.S.A. 2021 Supp. 25-3602(b)(4), which refences "petition circulator[s]" and does not mention elections or electors. But we cannot

13

read this provision in isolation, nor can we read out or ignore the remainder of that statute. See *Spencer Gifts*, 304 Kan. 755, Syl. ¶ 3.

Our review of other statutes that reference K.S.A. 25-3601 through K.S.A. 25-3608 further underscores our conclusion that those provisions were only intended to apply to election petitions. See K.S.A. 2021 Supp. 12-6a36(d) (requiring election for city to issue full-faith-and-credit bonds if protest petition objecting to issuance is signed by percentage of qualified voters in municipality); K.S.A. 2021 Supp. 12-1774(b)(2) (similar requirement for full-faith-and-credit tax-increment bonds); K.S.A. 41-302(a)-(b) (similar requirement for election questions concerning licensing the retail sale of alcohol in its original packaging). These statutes indicate the types of situations to which K.S.A. 25-3601 applies—petitions requiring signatures from a certain number or percentage of electors to trigger an election. Multiple other statutes reflect this system to prompt an election. See, e.g., K.S.A. 2021 Supp. 2-131b (in counties with fair associations, tax levies for erection and maintenance of fair association buildings); K.S.A. 10-203 (building, purchasing, or repairing of bridges); K.S.A. 12-614 (bonds for resurfacing paved streets); K.S.A. 12-1236 (creating library district); K.S.A. 12-3013 (describing process for proposed ordinances); K.S.A. 24-122 (returning oversight of drainage district to directors) ; K.S.A. 68-598 (abandoning county rural highway system); K.S.A. 72-1143 (establishment of teacherages); K.S.A. 80-1514b (general obligation bonds for fire district).

Zoning protest petitions under K.S.A. 12-757, however, are qualitatively different from election petitions. Unlike statutes concerning elections, rezoning begins by submitting a zoning amendment to a planning commission, not through a petition process. K.S.A. 2021 Supp. 12-757(b). Protest petitions do not trigger public involvement in the rezoning decision—a successful petition simply increases the threshold required for the Board to pass a rezoning ordinance or resolution. K.S.A. 2021 Supp. 12-757(f)(1). The petition-signing requirement is based on land ownership, not the ability to vote.

14

K.S.A. 2021 Supp. 12-757(f)(1). And petitions are filed with the city or county clerk, not an election officer. K.S.A. 2021 Supp. 12-757(f)(1).

The authorities that Pretty Prairie references on appeal do not persuade us otherwise. In *Deffenbaugh*, a panel of this court found a circulator properly verified signatures on zoning protest petitions under the predecessor to K.S.A. 25-3602(b)(4). *Deffenbaugh* assumed, rather than decided, that K.S.A. 25-3601 applied to zoning protest petitions; that issue was not presented for the panel's consideration, nor was it given any consideration or meaningful discussion in that opinion. Accord *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018) (Court of Appeals panels are not required to follow decisions of previous panels); *Graham v. Herring*, 297 Kan. 847, 861, 305 P.3d 585 (2013) (unpublished opinions are not binding precedent).

Similarly, in Attorney General Opinion No. 2003-18, the attorney general relied on the broad language of K.S.A. 25-3601(a) and (d)—stating the statute applies generally to petitions unless a more specific statute controls—to conclude the signatures of individual petitioners need not be notarized. But we owe no deference to this interpretation. Accord *Willis v. Kansas Highway Patrol*, 273 Kan. 123, 130, 41 P.3d 824 (2002) ("[A]ttorney general opinions are not binding law in Kansas."). And the statutory language, when read in context, shows that K.S.A. 25-3601 applies to election petitions, not zoning petitions.

In short, we conclude that the requirements of K.S.A. 25-3601 through K.S.A. 25-3608 do not apply to zoning protest petitions. K.S.A. 2021 Supp. 12-757(f)(1) requires protest petitions in the zoning context to be signed by a qualifying property owner and submitted to the county clerk within the timeframe provided in that statute. Contrary to the district court's statements in its ruling, the absence of further requirements does not indicate that courts must use other provisions to supplement that statute; it simply means that the legislature intended zoning protest petitions to be subject to fewer statutory

restrictions. Likewise, the fact that most of the protest petitions here included a circulator declaration does not mean such a declaration was required by law, or that the decision to include this declaration somehow transformed the documents into election petitions under K.S.A. 25-3601.

There is no question that the protest petitions here meet the requirements of K.S.A. 2021 Supp. 12-757(f)(1). Thus, the district court correctly concluded that the petitions were valid, albeit for a different reason than that court provided.

Before closing, we observe that the Intervenors urge several procedural reasons why we should not consider Pretty Prairie's appeal. They allege Pretty Prairie invited any error because it asked that final judgment be entered (even though all parties consented to that procedure), and they challenge the way Pretty Prairie brought this case before the district court. We do not find these arguments persuasive. And in light of our conclusion that the protest petitions in this case were valid under K.S.A. 2021 Supp. 12-757(f)(1), we need not address them further.

Affirmed.